WAYDELL and others vs. LUER.

The giving of a promissory note for a copartnership debt, by one of several partners individually after the dissolution of the copartnership, under an agreement by the creditor to accept it in payment of the debt, extinguishes the liability of the other copartners. Per LOTT, Senator, and GARDINER, President. PORTER and VAN SCHOONHOVEN, Senators, contra.

Where a copartner, after the dissolution of the firm, gave his individual note and the note of a third person to adjust and settle a partnership debt, held an extinguishment of the demand against the other partners, the creditors having agreed to receive the same in payment of such demand.

ON error to the supreme court. Luer sued Cort, Waydell and Underhill, in the New-York common pleas, in assumpsit. Waydell and Underhill pleaded non-assumpsit, and Cort suffered judgment by default. On the trial it appeared that the defendants had been copartners under the name of N. Cort & Co. for

about one year, ending in January, 1838, at which time they dissolved and made an assignment to trustees for the benefit of their creditors.   The trustees however did not act; but Cort, under some arrangement which was not distincly shown, was left in possession of the effects of the concern and acted in the adjustment of its affairs.   During the existence of the copartnership, the plaintiff lent the firm $1700, for which he took their note payable 7th February, 1838.   When this note became due, which was after the dissolution, the plaintiff called upon Cort at the store where the firm had transacted its business, and a settlement was made of the amount due on the note; and Cort gave the plaintiff his *own notes,* two for $500 each, at nine months, and one for $566, at four months, payable to the plaintiff or order, and—*as the witness who proved the facts said he believed*—some other person's note, and some money, to the amount of over $100, as he thought, which three notes of Cort, the note of the third person, (the amount or particulars of which the witness could not state,) and the money made up the amount due the plaintiff; and the plaintiff then gave up to Cort the note of the firm above mentioned.   An entry was made upon the books of the firm, crediting Cort with the amount of the plaintiff's debt, as though paid by him individually.   These notes given by Cort were renewed from time to time, and payments were made upon them until August, 1840, when the amount was reduced to $500, and Cort then, at the plaintiff's instance, gave him a note signed with the name of the firm, payable February 7th, 1841, for the amount, which was produced at the trial.   There was evidence *tending to show* that the defendant Waydell was acquainted with the fact that the plaintiff had taken the notes of Cort for his debt.

Upon these facts the counsel for Waydell and Underhill requested the court to charge the jury that they must determine, from the testimony, whether the plaintiff, after the dissolution of the firm, took the individual notes of N. Cort, the note of a third party and a sum of money in payment of the partnership debt, and gave up at the same time the copartnership note; and if he did so, that such acceptance of said notes and

money, without reservation of his claim on the other partners, was a discharge and release of the other partners, Waydell and Underhill. The court declined so to charge, but on the contrary instructed the jury that the settlement between the plaintiff and Cort could not operate to release the defendants Waydell and Underhill, except so far as the individual notes of Cort were afterwards paid; that the jury must disregard such settlement, and that the plaintiff was entitled to go back to the original loan and recover of all the copartners the balance remaining unpaid. The defendants excepted, and the jury returned a verdict in accordance with the charge, upon which the court rendered judgment. The defendants Waydell and Underhill brought error to the supreme court, where the judgment of the common pleas was affirmed. For a report of the case, see 5 *Hill*, 448. The cause was argued here by

*J. Humphrey & D. Lord*, for the plaintiffs in error. They cited and commented on *Thompson* v. *Percival*, (5 *Barn. & Ad.* 925;) *Hart* v. *Alexander*, (2 *Mees. & Wel.* 484;) *Evans* v. *Drummond*, (4 *Esp. R.* 91;) *Bedford* v. *Deakin*, (2 *Barn. & Ald.* 210, *S. C.* 2 *Stark. N. P. C.* 178;) *Arnold* v. *Camp*, (12 *John.* 409;) *Muldon* v. *Whitlock*, (1 *Cowen*, 296;) *Olcott* v. *Rathbone*, (5 *Wend.* 492;) *Oakley* v. *Pasheller*, (10 *Bligh's N. C.* 548; 4 *Clark & Fin.* 207, *S. C.*) *Reed* v. *White*, (5 *Esp. R.* 122;) *Boyd* v. *Hitchcock*, (20 *John.* 76;) *Le Page* v. *McCrea*, (1 *Wend.* 164;) *Hawley* v. *Foote*, (19 *id.* 516;) *Frisbie* v. *Larned*, (21 *id.* 452.)

*H. B. Cowles & C. O'Conor*, for the defendant in error, referred to *Herring* v. *Sanger*, (3 *John. Cas.* 71;) *Tobey* v. *Barber*, (5 *John.* 68;) *Schemerhorn* v. *Loines*, (7 *id.* 311;) *Putnam* v. *Lewis*, (8 *id.* 389;) *Porter* v. *Talcott*, (1 *Cowen*, 359;) *Hughes* v. *Wheeler*, 8 *id.* 77;) *Artcher* v. *Zeh*, (5 *Hill*, 200;) *Clark* v. *Mundal*, (1 *Salk.* 124; *Roades* v. *Barnes*, (1 *Burr.* 9;) *Puckford* v. *Maxwell*, (6 *T. R.* 52;) *Owenson* v. *Morse*, (7 *id.* 64;) *Drake* v. *Mitchell*, (3 *East*, 251;) *Hadwen* v. *Mendisabal*, (2 *C. & P.* 20;) 1 *Petersd. Ab.* 125, 127; *Chit.*

Waydell *v.* Luer.

*on Cont.* 289 ; *Maze* v. *Miller*, (1 *Wash. C. C. R.* 328 ;) *Shee-hy* v. *Mandeville*, (6 *Cranch*, 253 ;) *Jaffrey* v. *Cornish*, (10 *N. Hamp. R.* 505 ;) *Torrey* v. *Baxter*, (13 *Verm. R.* 452 ;) *Bar-ker* v. *Blake*, (11 *Mass.* 16 ;) *Dougal* v. *Cowles*, (5 *Day*, 511 ;) *Davidson* v. *Bridgeport*, (8 *Conn.* 472 ;) *Bill* v. *Porter*, (9 *id.* 23 ;) *Glen* v. *Smith*, (2 *Gill & John.* 493 ;) *Weaver* v. *Taps-cott*, (9 *Leigh*, 424 ;) 4 *Dev.* 90, 460 ; *Mourrier* v. *Meyres*, (1 *Bay*, 24 ;) *Barrelli* v. *Brown*, (1 *McCord*, 449 ;) *Bank of Com-monwealth* v. *Letcher*, (3 *J. J. Marsh.* 195 ;) *Hanna* v. *Pegg*, (1 *Blackf.* 101 ;) *Gordon* v. *McCarty*, (9 *Martin*, 268 ;) *Tur-pin* v. *His Creditors*, (*id.* 568 ;) *Smith* v. *Rogers*, (17 *John.* 340 ;) *Cole* v. *Sackett*, (1 *Hill*, 516 ;) *Rosseau* v. *Crittenden*, (14 *Verm.* 83 ;) *Kean* v. *Dufresne*, (3 *Serg. & R.* 233 ;) *Lodge* v. *Dicas*, (3 *Barn. & Ald.* 611 ;) *Harrison* v. *Close*, (2 *John.* 448 ;) *Wilder* v. *Fessenden*, (4 *Metc.* 12 ;) *Pabodie* v. *King*, (12 *John.* 426 ;) *Miller* v. *Holbrook*, (1 *Wend.* 317.)

LOTT, Senator. The material question presented in this case is, whether a partnership debt can, after notice of the dissolution of the copartnership, be paid and discharged by the negotiable note of one of the partners given to and received by the creditor, as payment and in satisfaction.

To a plain and practical man there would seem to be no possibility of a doubt in relation to it. He would naturally say that parties are at liberty to make such settlements as their convenience or interest may dictate, and that such an arrangement affords great facilities, and is peculiarly advantageous in settling a partnership concern. Such too appears to have been the opinion of Lord Kenyon, when it was sought to make all the partners liable for an original indebtedness under such circumstances. The proceeding, indeed, called forth an expression of indignation. He speaks in the following strong terms : "Is it to be endured that when partners have given their acceptance, and when perhaps one of two partners has made provision for the bill, that the holder shall take the sole bill of the other partner and yet hold both liable ? I am of opinion that when he chooses to do so he discharges the other partner." After referring to the

Waydell *v.* Luer.

terms of the transaction, he adds: "It is a reliance on the sole security of Combrune, [one of the partners,] and discharges the defendant," [the other partner.] (*Evans* v. *Drummond*, 4 *Esp. N. P.* 89. *See also Reed* v. *White*, 5 *id.* 122; *Bedford* v. *Deakin*, 2 *Stark. N. P. C.* 178.)

The question was distinctly and clearly brought under the consideration of the supreme court of this state, as early as 1815, in *Arnold* v. *Camp*, (12 *John.* 409;) and Thompson, Ch. J. there uses this emphatic language: "If the facts in the case before us will warrant the conclusion that when the individual note of Downing (a former partner) was taken and the partnership note delivered up, it was intended and agreed to be considered as payment of the note in question, there can be *no doubt* but that, in judgment of law, it will operate as a satisfaction of the partnership note." And the court gave judgment for the defendant. The same principle was fully recognized in *Muldon* v. *Whitlock*, (1 *Cowen*, 290,) and also in *Frisbie* v. *Larned*, (21 *Wend.* 450;) and in the latter case *Arnold* v. *Camp* is cited by the same learned judge who in the present case repudiates it. Indeed that case was universally acquiesced in, in this state, until as late as 1841, when it was for the first time questioned in *Cole* v. *Sackett*, (1 *Hill*, 516.) The case of *Smith* v. *Rogers*, (17 *John.* 340,) which was supposed by the counsel of the defendant in error to be an exception, is not so in fact. The note which was set up in that case as extinguishing the joint debt, was received to be applied to the credit of the partnership account "when paid," and the opinion of the court shows that their decision was placed on the ground that it was not intended as a discharge of the original liability. It is therefore in perfect harmony with the prior decisions, and they were not questioned by it. (*See also Tobey* v. *Barber*, 5 ,*John.* 72; *Witherley* v. *Mann*, 11 *id.* 518; *Sheehy* v. *Mandeville*, 6 *Cranch*, 253; *opinion of Ch. J. Marshall, p.* 264; *Harris* v. *Lindsay*, 4 *Wash. C. C.* 272; *Story on Partn.* § 155.) I do not deem it necessary to refer to the opinions of judges in England on the point, further than to say that, after careful deliberation, it was finally held as late as the year 1834, in *Thompson* v. *Percival*,

(5 *Barn. & Adol.* 925,) that a partnership debt might, by agree-ment, be discharged by the acceptance of the sole liability of one of the partners only. Lord Denman, in delivering the opinion of the court, speaks in the following terms : " It appears to us that the facts proved raised a question for the jury whether it was agreed between the plaintiffs and James that the former should accept the latter, as their sole debtor, and should take the bill of exchange accepted by him alone, by way of satisfaction for the debt due from both ;" and then, after discussing its effect, concludes : " If, therefore, the plaintiffs in this case did expressly agree to take and did take the separate bill of exchange of James, in satisfaction of the joint debt, we are of opinion that their doing so amounted to a discharge of Charles." That decision was made after a full consideration of *Lodge* v. *Dicas,* (3 *Barn. & Ald.* 611,) and *David* v. *Ellice,* (5 *Barn. & Cress.* 196, *S. C. 7 Dowl. & Ryl.* 690,) which were much relied on by the learned judge below. As to the first of which it was said that " no new negotiable security was given ; nor did the difference between the joint liability of the two and the separate liability of one of them appear to have been brought under the consider-ation of the court :" and in regard to the latter, " no bill of ex-change was given ; *and that decision is not altogether satis-factory to us.*" See also *Hart* v. *Alexander,* (2 *Mees. & Welsb.* 484,) decided in 1837, recognizing the same principle. It is useless here to examine more cases. They are most of them referred to in the opinion of the court below. The result of them is, that in England the note of one partner is considered as a discharge of a previous copartnership debt, when so receiv-ed ; and such also has been the understanding of the courts of this state, till the decision of *Cole* v. *Sackett,* above referred to. The authorities referred to in support of that decision will, I think, with great deference to the distinguished jurist who de-livered the opinion in that case, as well as the one under con-sideration, be found not to sustain his conclusion. They only establish the principle that the naked promise of the debtor him-self will never satisfy a pre-existing debt ; and that the taking of a note, either from one of several joint debtors or from a third

person, is not considered a payment of it, *unless it be agreed to be taken as payment,* and are therefore perfectly consistent with the rule laid down and adopted in *Arnold* v. *Camp.* A rule thus established, so reasonable and equitable in itself, and of such vital interest and importance to a commercial community, where there are frequent changes in the business relations of our citizens, ought not, after so long and continued an acquiescence, to be disturbed, unless inconsistent with some inflexible principle of law.

It then remains to be considered whether such a principle exists. The whole argument of the court below appears to be placed on the ground that a debt cannot be discharged by the mere promise of the debtor to pay it. " The logic of these pleas, (says the learned judge in *Cole* v. *Sackett,*) is no more than saying, ' Your precedent debt is discharged, because I promised o pay it in another form, and you accepted the latter promise as a satisfaction." Now I concede that the note of a debtor himself will not discharge a precedent debt, though it may suspend the remedy; yet I consider it to be equally well settled that the acceptance, by a creditor, of the note of a third person for an existing indebtedness, operates as an extinguishment of the original consideration, when agreed to be accepted in full satisfaction of it. See *Booth* v. *Smith,* (3 *Wend.* 68,) and *Frisbie* v. *Larned,* (21 *id.* 450,) where the whole doctrine is well considered by Mr. Justice Cowen. And here it may be useful to examine on what principle this latter rule is placed. In *Booth* v. *Smith,* the defendant was sued for the balance of a due bill, made by him to the plaintiff, in satisfaction whereof he subsequently gave a note for the amount due, of three other persons, endorsed by himself. These facts being set up in a plea, were held to be a good defence. Justice Sutherland, in giving the judgment of the court, says : " The plea is unquestionably good. It would have been good, by way of accord and satisfaction, if no part of the original debt had been paid prior to the acceptance by the plaintiff of the last note." He concludes by saying, " Although the defendant still remains liable, the character of his responsibility is changed. He has entered into a new con-

Waydell *v.* Luer.

tract with his creditor, who, upon an adequate consideration (the obtaining the note of a third person as an additional security for the debt) has agreed to look to the defendant as endorser only, and to relinquish all claim on him in any other character. 'He cannot be charged upon the original consideration." In the latter case, (*Frisbie* v. *Larned,*) there was an acceptance of the note of a third person from one of the members of a firm, endorsed by him, together with the payment of the balance of an account in cash. Judge Cowen held it a good accord and satisfaction, saying, "When a note of a third person is transferred by the debtor to and taken by the creditor, and credit is given for it as payment, the effect is the same as the acceptance of a horse or other chattel on the same terms. The simple contract of sale or claim by one side, and a promise to pay by the vendor or debtor, is departed from. A new and distinct contract is made, and new relations arise out of it." From these remarks it will be seen, that where there is a new contract made varying the relation of the parties, or where even the character merely of the responsibility is changed, upon a good consideration, then the original cause of action is discharged. This principle I understand indeed to be conceded, in the opinion of the court in the present case; but it is insisted that, in the acceptance of the individual note of one of the partners only, there is no consideration for the discharge of the other partners, and that an agreement, to that effect, is *nudum pactum.* It is argued, with much plausibility, that as the note of all of the debtors could not have that effect, it follows as " an obvious corollary, that the less and weaker security could not have a greater effect than the higher and stronger ;" but the argument is, in my opinion, fallacious. It assumes that each partner is individually liable for the debt of the partnership, and that consequently there is no new consideration for the promise. Although the debt is equally the debt of all the partners, yet there is no separate liability. The obligation is joint, and it cannot be enforced against one only. It is, in no sense, the several debt of either. In case of the death of one, the survivor is entitled to the possession and disposition of the assets to enable him to discharge the debts and settle the

concern. He alone is suable at law, and it was settled by this court in *Lawrence* v. *The Trustees of the Leake & Watts Orphan House*, decided in December, 1845,(a) that no relief can be had against the representatives of the deceased partner until the remedy at law has been exhausted against the survivor, except in the case of his insolvency. It is also a principle, fully recognized and acknowledged in this state, that in cases of bankruptcy the partnership debts must be paid out of the partnership estate, and private and separate debts out of the private and separate estate of the individual partner; and that partnership creditors have no claim on, and cannot resort to the separate estate of either partner, until his individual creditors are satisfied. (3 *Kent's Com.* 65, *and cases cited.*) It is evident, therefore, that it may frequently occur, that a claim against a firm may in fact be worth less than if held against one of its members, not merely on account of the means of enforcing payment, but as to the availability of the fund out of which it is to be made; and although the learned judge, in delivering his opinion below, says he " is unable to see how the name of one is better alone than when joined with another's in point of solvency," yet it is clear from the principles above referred to, that it may be more available as a security. When therefore a creditor agrees to release a joint indebtedness, by the acceptance of a note or any other obligation of one of his debtors in payment, he receives a consideration which may be more valuable to himself than the original claim. Whether it is in fact so is wholly immaterial. The slightest consideration is sufficient to support the most onerous obligation. (*Oakley* v. *Boorman*, 21 *Wend.* 588.) Indeed the additional obligation assumed by one of his debtors, by becoming responsible severally for the entire debt, would of itself render it a valid agreement. It is not necessary that there should be a benefit. Damage or loss by one party, sustained at the request of the other, is sufficient. (1 *Wheat. Selw. N. P.* 32, *ed.* 1823.) As it is expressed by Chancellor Kent, " A valuable consideration is one that is either a benefit to the party

_____

(a) 2 *Denio,* 577

Waydell *v.* Luer.

promising, or some trouble or prejudice to the party to whom the promise is made." (2 *Kent's Com.* 465, 2*d ed.*) The facts in the present case show that the individual notes of Cort were given upon the request of Luer the plaintiff, who said he wanted them "to raise money." The firm were insolvent, and from the circumstance that payments were from time to time made, it is probable that there was more prospect of ultimate payment of the demand by Cort alone than by a reliance on the firm. At all events, I am clearly of opinion that the doctrine of *nudum pactum* is not applicable to the present case. There may, as Judge Marshall said in *Sheehy* v. *Mandeville,* above cited, "be inducements to take a note from one partner liquidating and evidencing a claim on a firm which might be a sufficient consideration for discharging the firm." When therefore a creditor has made a settlement which may involve one partner in increased responsibility and give him a credit with his former partners to the extent of the debt assumed, the relation of the parties is varied, and new liabilities are incurred which the law considers a valid consideration. To use the language of Judge Platt, in *Boyd* v. *Hitchcock,* (20 *John.* 76,) which was an analogous case, "good faith and sound principle require that this should be deemed a valid accord and satisfaction to bar the plaintiff's action."

Entertaining these views, I am of opinion that the judgments should be both reversed, and a *venire de novo* awarded.

PORTER, Senator. That the debt sought to be recovered was at one time the debt of the defendants in this suit, is not disputed; but the retiring members insist, that as the plaintiff below knew of the dissolution of the copartnership, and that the business of settling the debts of the firm had been left with Cort, together with their property; he knowing this and consenting to extend the credit, and to take the individual promise of Cort, and give up the note of the firm, has virtually released the firm from the original liability.

The contract of indebtedness having been established, the court should have evidence of its performance; or that it has

been released or discharged in some valid, legal manner; or that the promisee has done some act, inconsistent with his claim to enforce the original promise—otherwise we must recognize the continuing liability, and sustain the suit upon it. It must be admitted that there have been discordant decisions upon the question presented in this case. It has been decided that by taking the note of one of two joint debtors, the joint debt is discharged. The plaintiffs in error in this case are called upon to maintain that position as sound law. In looking back upon the decisions of the supreme court, we find that in *Arnold* v. *Camp*, (12 *Wend.* 409,) it held, that when the payee of a note given by a partnership, took the individual note of one of the partners and gave up the first note, it was a discharge of the partnership debt. This case cannot be distinguished, as I read it, from the one before us; and if it can be sustained, is decisive for the plaintiffs in error. It is important therefore, to look at the authority upon which that decision reposes. The case of *Sheehy* v. *Mandeville*, (6 *Cranch*, 264,) is first cited by the court, and in that case it was held that a plea which averred that a note of one partner had been taken on an express agreement with the creditor that it should be received in satisfaction of a partnership debt, was a good plea. In one aspect, this case is in conflict with the opinion of the supreme court in the case now before us—in respect to the doctrine of *nudum pactum*—and sustained the case of *Arnold* v. *Camp*. But without the averment of an express agreement, of which there was no proof in *Arnold* v. *Camp*, there is no reason to suppose that the same decision would have been made.

*Newmark* v. *Clay*, (14 *East*, 239,) is also relied upon. But I can extract no principle from this case which supports the decision of *Arnold* v. *Camp*. The question turned upon the appropriation of a payment that had been made by two remaining members of a firm, to the discharge of a debt contracted while a third person had belonged to the firm, and who was sought to be charged in that suit with the payment of the same debt. While they thus continued partners, the creditor received in payment bills of exchange, which were dishonored after the partnership was dissolved; but the remaining partners took up the dishon-

ored bills, by giving good ones in their places. · And the question was whether the avails of the good bills should be applied to the old debt, or to a debt afterwards contracted by the remaining partners. The court held that delivering up the dishonored bills upon the receipt of the new bills was evidence of a particular appropriation of the new bills to the payment of the old debt. So far from the retiring partners relying upon the creditor's receiving the note of the remaining partners in satisfaction of his indebtedness, they had substituted bills that were paid, for the dishonored bills; so that this question was entirely excluded.

The other cases cited by the court (*Tobey* v. *Barber,* 5 *John.* 72, *and Wetherby* v. *Mann,* 11 *id.* 518,) only decide that accepting a note of a third person, upon an express agreement that it shall be received in payment of a pre-existing debt, is a discharge of that debt. The creditor in such a case runs the risk of its being paid. Before these last authorities can be made applicable to the case of *Arnold* v. *Camp,* the case should have shown, that Arnold has expressly agreed to take Downey's note in satisfaction of his debt. Besides, the liability of a third party forms a new and distinct consideration. Of this there was no pretence. I am therefore constrained to think that the case of *Arnold* v. *Camp* was not well considered, and is not sustained by the authorities cited and relied upon.

But let us inquire how it agrees in principle with the decisions of the supreme court, in other cases which have never been questioned. The position taken in this case is, that the acceptance of the note of Cort worked a complete satisfaction of the original debt, and was a legal fulfilment of the contract of the joint debtors. The principle is well settled, that when a debtor gives his own negotiable note for a prior debt, it is no absolute satisfaction and discharge of the debt. It may be deemed *prima facie* evidence of such discharge; but as the production and destruction of the note, on the trial, rebuts this evidence, it is plain that the original indebtedness has never been cancelled. *Pintard* v. *Tackington,* (10 *John.* 105,) *Angel* v. *Fulton,* (8 *id.* 149,) *Holmes* v. *De Camp,* (1 *id.* 34,) and many other more recent cases establish this position. The court has sometimes said

that the note in such cases extinguishes the debt *sub modo ;* but it has, I apprehend, never been contended, that it operated as a complete satisfaction. And why is this so? For the simple reason that one promise cannot in law or common sense be said to be given or received in satisfaction of a prior promise. It can only be considered as a re-acknowledgment of the same identical debt. If such is the acknowledged rule in a case where all the debtors join in a note ; by what rule of logic can a case be taken out of the rule, when only a part of the debtors renew the promise to pay the same debt? If a third person should join the original debtors, or a part of them, in giving a new security, it might furnish a consideration to sustain a promise to accept of the substituted security. In *Muldon* v. *Whitlock,* (1 *Cowen,* 290,) the plaintiff had sold goods to four persons, charging the goods to all of them in their books ; and two months afterwards took the note of two of them for the amount ; and gave a receipt in full of the account. The makers of the note failed, and the creditors brought their action against all the debtors. The court held that they were all liable on the original indebtedness; that the receipt of the note, and giving a receipt in full of the account, did not absolutely discharge the debt. In principle that is precisely the case now before us ; and the facts are equally strong to sustain the doctrine claimed by the plaintiffs in error. In both cases the proof is wanting to establish any special agreement. In one there was a receipt in full given for the accounts and in the other there has been a surrender of the partnership note. If one of these acts furnishes any evidence of a special agreement, so does the other; and neither one more than the other. If we should now yield to the argument of the plaintiff's counsel, we must necessarily overthrow this and numerous other cases ; and indeed the whole current of decisions, as I understand them, except *Arnold* v. *Camp.*

The unsoundness, as it appears to me, not to say absurdity of the rule now contended for, is strongly exemplified in the case of *Cole* v. *Sackett,* (1 *Hill,* 516.) To a declaration containing the common counts, and an account stated, the defendants pleaded in bar of the action, that they had accounted with

Waydell v. Luer.

the plaintiff concerning the alleged *causes of action*, and ascertained the balance due to him; and given him their promissory note therefor, in full satisfaction and discharge of the debt. There was a demurrer to the plea, and the court very properly held, as I think, that a promise to pay a debt, though that promise is in the shape of a promissory note, is really no actual payment or satisfaction of that debt. I can hardly think it would have been creditable to the law, as a rational science, to have upheld such a plea. Thus we find that the supreme court have, through a long course of decisions, with the single exception named, adhered to the same principle upon which their opinion in this case is based.

I will advert to one consequence of the principle for which the plaintiff contends, and which will show the injustice that might often follow its adoption. Soon after the dissolution of this firm, the former partners made an assignment of their effects for the benefit of their creditors; and we may reasonably suppose that the firm was insolvent. The notes of Cort were received, and that of the firm given up about that time. If from that time this ceased to be the debt of the firm, and became the debt of Cort alone, then it lost all claim upon the assets of the firm. The plaintiff below must be content to wait until all the other debts of the firm were satisfied, and then limit his claim to a share in one-third of the surplus, upon an equal footing with all the other creditors of Cort.

The plaintiff's counsel relied much upon certain English authorities which he adduced, as bearing upon this question. The earliest case referred to, and the earliest in existence, I suspect, on that side of the question, is *Evans* v. *Drummond*, (4 *Esp. R.* 91.) This was a nisi prius decision in which Lord Kenyon held that when a creditor held the bill of a firm, for the debt of the firm, and after a dissolution allowed one of the firm to renew it, by giving his own bill, he discharged the other partner. It is only the opinion of a very learned judge, given in the course of a trial, unsupported by the citation of any authority, or by a course of reasoning amounting to a legal argument. The same principle was adopted in *Reed* v. *White*, (5 *Esp. R.*

122.) The suit was brought to recover the price of cordage sold to the defendants as owners of a ship. White was the ship's husband. Reed took White's bill for the amount, which was dishonored. He then brought this action against the owners; and Lord Ellenborough held at *nisi prius*, that by dealing with White separately, he had adopted him as the debtor, and discharged the others. It is in principle and in its facts the precise case of *Muldon* v. *Whitlock* before cited from our supreme court; except that in that case, the creditors gave a receipt in full of the account, when they took the note of two of the firm debtors. In this respect the facts which might tend to sustain the opinion of Lord Ellenborough were stronger; and yet our court held directly the reverse.

The principle of these two cases from *Espinasse*, was sanctioned in a decision at bar in 1834, in *Thompson* v. *Percival*, (5 *Barn. & Ald.* 925.) In this case there was a partnership debt due from A. & B. They dissolved, and B. continued the business on his own account, and retained the funds to pay partnership debts. B. gave his individual acceptance to a creditor of the firm for a debt of the firm. The bill was dishonored, and the creditor sued the firm. The court held that it was a question for the jury, whether the creditor had agreed to accept B. as his sole debtor. Prior, however, to this decision, a different principle had prevailed in the court of king's bench. In *Lodge* v. *Dicas*, (3 *Barn. & Ald.* 611,) that court decided, that where on the dissolution of a partnership it was agreed between the partners, that one of them should pay the debt of the plaintiff, due from the firm, and when he was informed of it, he agreed to exonerate the other partner from all responsibility; that this did not furnish a defence to an action against both partners. In 1826 the same doctrine was repeated in the same court, in *David* v. *Ellice*, (5 *Barn & Cress.* 196.) In that case there were three partners, and one of them retired from the firm and gave notice to the creditors. The others continued in the business, retained the funds and agreed to pay the debts. The plaintiff, a creditor, assented to the transfer of his credit to the new firm; and they paid a part of it by a bill drawn on them

*Waydell v. Luer.*

by the creditor, and then failed. The court held that notwithstanding this, the retiring partner was still liable. These two cases are in conformity with those in our courts, and, as is believed, with well founded principles, and can hardly be said to be impaired by those of a contrary tendency.

I can see no ground upon which to question the decision of the supreme court, and shall therefore vote for its affirmance.

TALCOTT, Senator. The proposition which the defendants' counsel desired the court to affirm in its charge, assumed that there was evidence tending to show that the note of a third person was transferred by Cort to the plaintiff, on account of the copartnership debt, on the occasion of the adjustment when Cort gave his individual notes to the plaintiff. There was some evidence to that effect. But the court refused to charge in the manner requested, and on the contrary instructed the jury to disregard the settlement between Cort and the plaintiff, and that the latter was entitled to go back to the original loan, and recover of all the copartners, the balance still remaining unpaid. In this decision, I think an error was committed which requires the cause to be sent back for a new trial. No doctrine is better settled in our courts than that an agreement between a debtor and creditor for compromising a debt will be valid, and cut off the creditor from a right of action upon the original indebtedness, provided new security is given for the payment of the whole or any portion of the debt, and the creditor agrees to accept the substituted securities in satisfaction of the prior indebtedness. (*Boyd* v. *Hitchcock*, 2 *John.* 76; *Le Page* v. *McCrea*, 1 *Wend.* 164; *Frisbie* v. *Larned*, 21 *Wend.* 452.) In such a case, the old claim is cancelled, as between the debtor and creditor, and a new one created in its stead, upon which alone the creditor must rely in the assertion of his legal rights. This legal consequence will follow, however, the original debt, or the securities by which its payment was guarantied may have been changed under the new arrangement. A part of the former debt may have been extinguished, or one or more of the original debtors discharged from liability, and if so, it having been done

upon a good consideration, the creditor will be bound by his agreement, and must lose what he has agreed to surrender. Under the testimony in this case, I think the jury would have been authorized to find that the note of a third party was deliv ered by Cort to the plaintiff, and that the latter agreed to accept that note, together with the notes of Cort and the cash paid, in "settlement" or satisfaction of the copartnership debt, and that the copartnership note was, at the same time, given up to be cancelled. If these facts had been so found by the jury, no recovery could have been had against the plaintiffs in error. The judge, therefore, should have charged as requested upon these points.

Upon the important question discussed in the opinion given by the supreme court in this case, to wit, whether the agreement between Cort and the plaintiff would have discharged the firm indebtedness, provided the note of a third person had not formed a part of the consideration for that agreement, I concur in the conclusion to which that court came, that the original liability of the whole firm would, in that case, have remained unchanged by the agreement. Had the demand been against Cort alone, instead of being against the firm of which he was a member, it is well settled that the payment of a part of the debt in cash and the giving of his own note for the balance would not have discharged the former indebtedness, or barred a suit on the origi- nal consideration, after the expiration of the credit given by the new note, for the reason that there would have been no consid- eration, in that case, to support such agreement. I can see no better consideration to support an agreement to discharge a debt against a firm upon receiving therefor the note of one of the members of such firm. The security of the creditor can, in no court, be increased by such substitution; nor can I see that the partner who thus assumes the payment of the debt, can be in- jured thereby. In either case, he is liable for the whole amount of the debt, and it can make no difference with him, whether his liability be joint or several. His entire property is, in both cases, equally holden for its payment. If such an agreement were valid, the partner who should discharge a firm debt by

Waydell *v.* Luer.

giving his individual paper therefor, might obtain the advantage of being able to enforce contribution from his copartners before any actual payment was made by him. The right to enforce contribution accrues on the payment of the copartnership debt by a member of the firm; and if the giving of his own note in pursuance of an agreement to that effect between himself and the creditor, be held to constitute such payment, the right would vest when this should be done. As to the creditor, on the other hand, while he would lose the advantage which he might derive from having a claim against all of the persons composing the firm, he could not thus acquire the right of a prior equitable lien upon the assets of the individual partner as against the other creditors of the firm. Such other creditors, not being parties to the arrangement for the substitution of an individual indebtedness in place of the copartnership liability, could not, in case of the insolvency of the individual partner, be thus foreclosed from the right to come in upon equal terms with the holder of such substituted security, upon a distribution of the assets of the individual partner among his creditors.

On the ground first stated, however, I think the judgment of the supreme court should be reversed and a *venire de novo* awarded.

JOHNSON, Senator, also delivered a written opinion, in which he took the same views of the case and arrived at the same conclusion which Senator Talcott had done.

HAND, Senator, delivered an oral opinion concurring substantially with the opinion of Senator Talcott.

VAN SCHOONHOVEN, Senator, delivered a verbal opinion in favor of affirmance, agreeing in substance with the positions taken in the opinion delivered in the supreme court.

GARDINER, President, delivered an oral opinion in favor of reversal, upon the grounds taken in the opinion of Senator LOTT.

On the question being put, " Shall this judgment be reversed ?" the members of the court voted as follows :

*For reversal :* The PRESIDENT, and *Senators* BACKUS, DEN-NISTON, EMMONS, HAND, JOHNSON, JONES, LOTT, SANFORD, J. B. SMITH, TALCOTT and WHEELER—12.

*For affirmance :* *Senators* DEYO, HARD, PORTER, S. SMITH and VAN SCHOONHOVEN—5.

Judgment reversed.