SHEA (HEINSHEIMER v.). See Case No. 12,729.

SHEA (UNITED STATES v.). See Case No. 16,269.

---

## Case No. 12,729a.

### SHEAFE et al. v. KIMBALL et al.

[18 Betts. D. C. MS. 84.]

District Court, S. D. New York. March 24, 1851.

INFANCY — CONTRACTS — PARTNERSHIP — CHARTER-PARTY — BREACH — ACCEPTANCE OF NOTES — AMOUNT OF RECOVERY.

[1. A minor partner is not liable on partnership contracts.]

[2. The acceptance of notes as a liquidation of a claim for breach of charter-party, but not in satisfaction thereof. does not bar the admiralty jurisdiction, if the notes are surrendered into court for cancellation but the amount of the recovery is fixed by the notes.]

[This was a libel by Samuel Sheafe and Horatio Coffin against Edward W. Kimball, Michael P. O'Hearn and Thomas Dunkin, for breach of charter party.]

BETTS, District Judge. The libel charges that the co-partnership of E. W. Kimball, consisting of Edward W. Kimball, Michael P. O'Hearn and Thomas Dunkin, at New York on the 17th day of May, 1849, by their agent John F. Schwander. chartered of the libellants the ship Alhambra, for a voyage from New York to Liverpool and back to New York. and for the charter or freight on the voyage out and back engaged to pay the libellants $1800 and pay all incidental expenses. &c., and to furnish the ship with cargoes of lawful merchandise or passengers on both

voyages. The libellants aver a full performance on their part of the terms of the charter-party and they charge that the respondents refused to fulfill it on their part in not supplying the cargoes in New York agreed to be furnished, and when the ship arrived at Liverpool refusing to receive the consignment of her as stipulated, pay her expenses, a portion of the freight, &c., and to load and dispatch her to New York. and claim damages to the amount of $3854. satisfaction of which sum with interest from October, 1849, is demanded. The warrant of arrest was served on O'Hearn and Dunkin. Kimball was returned not found, and a supplemental libel was filed praying process of foreign attachment. It was issued and certain effects attached to compel his appearance, but he did not appear or offer any defence. The other respondents answer separately and by different proctors.

O'Hearn admits the charter of the vessel by the firm by Schwander, but does not know that it was in behalf of the libellants. He is ignorant of the transactions in Liverpool, but alleges the master of the ship by due diligence might have procured a charter there which would have protected the respondents from loss. He admits that on the return of the ship the libellants claimed damages to $3854. and that the matter being in dispute an adjustment was finally made by the respondents giving their two promissory notes dated October 25, 1849, and for $1850 payable in thirty days and one for $1000 payable in 60 days, which notes the libellants still hold and have never restored to respondents or offered so to do; and insists the maritime character of the contract was thereby merged, and the libellants have no right to resort to the original consideration of the notes. nor recover beyond their amount; and denies the jurisdiction of the court.

Dunkin in his answer denies that the firm of the respondent were engaged in chartering vessels for Liverpool, and that. although he is informed and believes one of the firm executed the charter party articled upon, he had no authority to bind the copartnership thereby and the respondent had expressly refused to give authority or be concerned therein. As to the matters of detail he is ignorant, except that he admits the friends of the firm to whom the ship was consigned in England refused to accept the consignment, or take any charge or responsibility on account of the ship, and so notified her master. That the said copartnership was dissolved on the 23d August, 1849, by the respondent retiring therefrom, of which the libellants had notice, and that subsequent thereto the libellants through their agent Schwander settled their demand against the firm of E. W. Kimball & Co. by taking notes in the name of the new firm (continued by other parties) which notes the libellants have still in their possession. That at the settle-

ment the libellants by their agent insisted that the notes should be endorsed by the respondent, but finally consented to take them without such endorsement, whereby he was discharged and the jurisdiction of this court was taken away. That the ship was not of the tonnage stipulated in the charter-party, and that her freight lists on the voyages were sufficient to satisfy her full value. That he never assented to the said charter party, but always dissented therefrom as being contrary to his express agreement with his co-partners. It was executed in his absence. That at the time he was under the age of 21 and did not attain his majority until 30th day of October, 1849, and has never in any way ratified or confirmed the charter-party, but has at all times protested against and repudiated it.

A general replication was put in by the libellants and they also filed interrogatories to be answered by O'Hearn.

(1) The evidence of John Dunkin the paternal uncle, and of Hester Paret the maternal aunt, and of John T. Dunkin, the brother, of the respondent Thomas Dunkin, is satisfactory proof that this respondent did not attain the age of 21 until the thirtieth of October, 1849. The charter-party was executed in May, 1849, and the notes given on the adjustment of the contract were given the 25th October of the same year. This was after Dunkin had withdrawn from the partnership, and after that the old partners had no authority to bind the retiring partners by giving notes in the partnership name. 2 Kent, Comm. 63, note; Colly. Partn. (Perkins' Ed.) §§ 540, 546, and notes. And therefore it is of no consequence in this case whether Dunkin [became of age] before or after the 25th of October, if he did not till after the 17th of May. At both these periods the respondent was a minor, and not bound by the contract, even if entered into by him personally. There is no distinction between the maritime law and common law in respect to the construction and obligation of contracts. The difference in the two laws consists in the remedy afforded for enforcing a contract.

It is proved by James B. Gager that the respondent, a month or two before the charter-party was executed, told the witness in a friendly conversation that he was then married, the father of two children and twenty-five years of age. If this conversation is correctly recollected by the witness, it is evident it must have been mere trifling on the part of the respondent. His brother proves that he was not married till the spring of 1848 or 1849, and had no child at the time of the alleged conversation. Besides the conversation had no relation to any dealings of the respondent, or his capacity to enter into a contract, and worked no deception or wrong to the libellants.

The charter-party or notes cannot therefore be enforced against this respondent without a direct or implied affirmance of them after he became of age. 2 Kent, Comm. (6th Ed.) 232–239; Tucker v. Moreland, 10 Pet. [35 U. S.] 73.

(2) The charter-party was a maritime contract, for breach of which an action lies in this court against the adult parties. [Certain Logs of Mohogany, Case No. 2,559]; Ben. Adm. § 287. Giving and receiving promissory notes for the amount due between the immediate parties does not change the character of the contract. The notes whilst outstanding suspend the remedy in admiralty, but upon being cancelled or surrendered, the libellant is reintegrated to his original privilege, and can pursue his remedy in this court. The Active [unreported]. It is sufficient if the libellant produces in court and surrenders or cancels the note, on the hearing. The General Smith, 4 Wheat. [17 U. S.] 438; [Ramsay v. The Allegre] 12 Wheat. [25 U. S.] 611.

(3) On the 23d August, 1849, public notice was given in the newspapers in the city that the defendant Dunkin had retired from the copartnership, and a witness for the libellant proved that when the notes were given, Dunkin was not a member of the firm. The witness drew the notes and they were signed by O'Hearn in the name of E. W. Kimball & Co., which continued to be the name of the firm after Dunkin retired. Does that change of the responsibility of parties merge the former contract in the new one, and thus take away the remedy of the libellants upon the first?

The new notes did not bind Dunkin, no special authority from him to the former parties to use his name after the dissolution being proved; nor the old copartnership itself. Colly. Partn. §§ 540, 546, and notes; 2 Kent, Comm. (6th Ed.) 63. And therefore they must stand solely upon the footing of obligations of the new firm of G. W. Kimball & Co.; and I take it upon the evidence, that the new firm consists solely of the members of the preceding one who were alone liable in law upon the charter-party.

The debt and obligations created by that contract were accordingly operative as against G. W. Kimball and O'Hearn, they standing, because of the infancy of Dunkin, the only contracting parties in the undertaking. On the retirement of Dunkin from that firm, therefore, no change in the relation of the creditors of the old firm, or in respect to the competency of the continuing members to bind themselves for their own debts, was effected. The debt in question was all the while the debt of G. W. Kimball and O'Hearn and not of Kimball, O'Hearn, and Dunkin. If, then, the new notes given for that debt, had been executed by Kimball and O'Hearn, no question in law could arise whether it operated as an extinguishment of their antecedent debt. The notes appear, however, to have been executed by O'Hearn alone, Kimball not being present; and as Kimball

is not arrested and made a party to this suit personally, it is fairly inferable that giving the notes is the single act of O'Hearn without the presence or assent of Kimball.

In neither aspect of the case does it seem to me that the former debt is extinguished by giving these notes. If they are merely the notes of Kimball and O'Hearn, then the transaction amounts to no more than substituting a direct promise to pay a debt already due by them, and this most clearly does not extinguish or merge the original indebtment. 5 Hill, 448; Waydell v. Luer, 3 Denio, 410.

All the cases are examined and discussed in those decisions, and the result is that joint debtors giving their joint notes or the note of one of them for a debt antecedently due, does not extinguish their liability on the original debt. The distinction established by the decision of the court of errors is, that if the new note is accepted in payment of the debt, then it extinguishes the liability of the parties who do not sign it, upon the former indebtedness. If the new notes given are really obligatory only upon O'Hearn then they fail operating an extinguishment of the prior debt, because there is no proof they were accepted on any such agreement. They were evidently intended to have no other effect than to liquidate the amount due upon the transactions between the parties, and perhaps afford the payees a more ready method of collecting the amount. This does not constitute a different consideration or relation between the original debtor and creditor which affects the right of the latter to resort to the primitive debt. 8 Cow. 77; 21 Wend. 450. And without the express engagement to accept them as the notes of O'Hearn and in satisfaction they do not affect the title of the libellants to the prior debt. Arnold v. Camp, 12 Johns. 409. In my opinion therefore the libellants have a right to maintain their action upon the original contract, on surrendering the notes given by O'Hearn; but I think the arrangement then made must be regarded a definitive adjustment of the amount the libellants are entitled to demand, and the recovery must accordingly be limited to that sum.

The decree will be in favor of the libellants for $2850, with interest from the 25th of October, 1849, and costs against G. W. Kimball & Co., the original debtors, and that the libel as to Dunkin be dismissed. I do not think under the circumstances Dunkin is entitled to recover costs. I should award them against him had he directly or personally taken part in the chartering of the vessel or adjusting the balance payable; but as no act of his is proved misleading the libellants, as to his liability for the demand, further than standing before the public as a general partner in the firm, I do not think he should be subjected to the costs of the suit.