Edward M. Shepard, Referee.
—After the death of Mr. Freneau, the two surviving members of the firm, Messrs. Hawkins & Brainerd alone were at law liable to the plaintiff (Waydell v. Luer, 3 Den. 410, per Lott, S.). The plaintiff had merely an equitable recourse to the Freneau estate upon his showing either that the survivors were insolvent in fact, or that he had exhausted his legal remedy against them (Lawrence v. Trustees, 3 Den. 577; Van Riper v. Poppenhausen, 43 N. Y. 68; Pope v. Cole, 55 N. Y. 124). The Freneau estate was therefore a surety to the plaintiff for the payment of his debt by the survivors; and in this action l he estate may avail itself by way of defense of any conduct on plaintiff’s part which violated its rights or suspended its remedies as a surety (Millerd v. Thorn, 56 N. Y. 402; Colgrove v. Tallman, 67 N. Y. 95; Dodd v. Dreyfus, 17 Hun, 600; Maier v. Canavan, 8 Daly, 272; Billborough v. Holmes, L. R. 5 Ch. D. 255). If, therefore, the plaintiff agreed that the money due him from P. L. Freneau & Co. should be contributed as capital to the copartnership newly formed by Messrs. Hawkins & Brainerd for the term of the copartnership, so that he could no longer at any time demand the debt from them, the Freneau estate was discharged.
The defendant contends that such an agreement may be inferred from slight circumstances. He relies upon authorities, . holding that where one partner has retired and the remaining partners (either with or without new partners), *399 have as a new firm taken the assets and assumed the liabilities of the old firm, the court is very ready to find that a creditor of the old firm continuing to deal with the new-firm has substituted its liability for the liability of the old firm. These authorities, however, are not directly in point. The defense here is not that the plaintiff took Hawkins & Brainerd as his sole debtors, but the very different, though doubtless equally valid defense, that he contributed the debt due him to the new firm as capital at the risk of the new business. There seems to be no sound reason for not requiring abundant proof of such an agreement. If it were made, it radically changed the relations of the parties. It was an agreement of a kind likely to be definitely and expressly made, rather than to arise (as the substitution as debtors of a new firm, for the old firm it succeeds, oftentimes arises), out of many events of business intercourse, which although separately not considered with care, have still gradually led to and exhibited a plain understanding and intention on both sides (Harris v. Farwell, 15 Beavan, 31, 35).
The defendant’s authorities are beside applicable chiefly to the case of a retiring and not of a deceased partner. It i* true in the case of the remaining partners taking the firm assets and assuming the firm debts, and the creditor being advised of the change, that, not only a retiring partner, but also the estate of a deceased partner, has certain privileges of suretyship. But there is the important distinction, that until some new agreement is made, the retiring partner and the, remaining partners are together jointly liable for the debt; while after the death of one partner, the survivors alone are jointly liable for the debt. If there were originally three partners, after the retirement of one, the creditor still has three debtors jointly held to him, and the joint property of those three is the primary fund for his payment. But after the death of one of the partners the creditor has only two debtors ; and to them and to their joint property he is bound in the first instance to look. In the case of the retiring partner, inasmuch as he *400 is still directly and primarily liable to the firm creditor, any exclusive dealing of the creditor with the remaining partners and exclusive recognition of them as his debtors, being a course of conduct inconsistent with an intention to hold all of the original debtors, may come to import an intention and agreement to take the joint liability of the remaining partners in lieu of the joint liability of the retired and remaining partners together. As has been clearly pointed out, the joint liability of the remaining partners may be a far better security than the joint liability. of the retiring and remaining partners (Waydell v. Luer, supra, per Lott, S. 410).
Even this rule, however, is very carefully guarded. Although slight evidence may be sufficient to establish the novation, the agreement must be plainly brought home to the creditor, whose rights and security cannot be changed except with his consent. Receipt of interest by the credit- or from the remaining partners, his proof of his claim against the new firm as for money had and received to his use, and his entering into an arbitration of the claim with the remaining partner, have been held insufficient to discharge the retiring partner (Harris v. Farwell. 15 Beav. 31; Kirwan v. Kirwan, 2 C. & M. 617; Blew v. Wyatt, 5 Car. & P. 397; Gough v. Davies, 4 Price, 200; Oakford v. European, &c. Co., 1 Hem. & M. 182; Harris v. Lindsay, 4 Wash. C. C. 271). Blew v. Wyatt, was the case of a clerk remaining in the employ of several successive firms and fully aware of the changes. He was permitted to recover against the original partners. Lord Lyndhurst observing “that mere knowledge tif the changes will not be sufficient : there must be some agreement shown between the parties.”
The creditor may, indeed, gain the credit of the new firm without losing the security of the oldfirm. The agreement of the new firm with the old firm may be a consideration enuring to the benefit of the creditor, though he remain, passive and surrender nothing (Harris v. Farwell, 15 Beav. 31; 1 Lindley Partnership, [4th Ed.] 449).
*401 But in the case of the deceased partner, any such exclusive dealing of the creditor with the survivors, and recognition of them as his debtors, does not prove a release by him of his possible future claim in equity against the estate of the deceased partner. For the creditor was bound to so recognize the survivors, and in the first instance exclusively look to them, for the plain reason that they were his sole debtors at law and his primary debtors in equity. As to the joint property of the survivors, he stood, without any agreement, upon the same basis as their new creditors (Ex parte Kendall, 17 Ves. 514). In this state, where the modern English rule is not followed, he could not, in the first instance, even in equity, join the representatives of the estate of the deceased partner with the surviving partners (Voorhis v. Childs’ Executor, 17 N. Y. 354; Wilkeson v. Henderson, 1 Mylne & K. 582). He must first exhaust his remedy against the survivors or show their insolvency. When, therefore, the creditor treats the survivors as his debtors, receives interest or partial payment from them, sues them, delays for years demanding money of them, proves his debt against them and receives dividends in bankruptcy, he has been held not to release his right to art equitable recourse against the estate of the deceased partner (Winter v. Innes, 4 Mylne & C. 101; Sleech’s Case [Devaynes v. Noble], 1 Meriv. 527, 540; Daniel v. Cross, 3 Ves. 277). In Sleech’s case, the Master of the Rolls said (p. 569).: "Ex hypothesis the surviving partners are liable to the payment of this debt, and ought in the first instance, to be called upon for the payment of it. How is it then that a credit- or, by acting upon that acknowledged liability to the extent that his convenience and occasions may happen to require, is quoad the residue of his debt to be placed in a worse sitúa tion than he would have quoad the whole if he had demanded no part of it ? Miss Sleech, by drawing a draft upon the surviving partners, recognizes them as her debtors. Such undoubtedly they were; but how does that affirma.tive act prove negatively that thenceforth no other persons ‘were to be her debtors?” In Hamersley v. Lambert (2 *402 Johns. Ch. 508), Chancellor Kent held the doctrine to be fully established “ that neither delay nor lapse of time, nor dealing with the survivor, nor calling for and receiving part of the debt from the survivor amounts to a waiver or bar of the claim upon the assets of the deceased.”
In my opinion, therefore, the fact that the plaintiff evidently looked to Messrs. Hawkins and Brainerd for payment and accepted interest from them, and asked them to pay him part of his debt, and did not press them for payment for fourteen months after the death of Mr. Freneau, raises no presumption that he had agreed to release the defendant’s secondary liability to him, which he may well not have had in mind at all. On the contrary, it was conduct perfectly consistent with his having a primary claim against Messrs. Hawkins & Brainerd and a secondary claim against the Freneau estate as surety.
The case must, therefore, depend upon the interview between Hawkins and Brainerd and the plaintiff in March, 1881. The witnesses differ materially in their recollections of the conversation at that interview. Hawkins and Brainerd say that they then agreed with the plaintiff to employ him at a salary of $3,000 a year and ten per cent, of the profits, and that in consideration of that employment he agreed to leave in the business as capital at its risk the money due him upon which he was to .receive 6 per cent, interest. The plaintiff admits the employment, but denies that any agreement was made to leave his money. It would certainly be at best unsatisfactory to find an agreement constituting plaintiff a partner from conflicting- recollections of a single conversation unsupported by other circumstances. Testimony as to conversations, though given by the most honest and careful witnesses, cannot, through the imperfections of memory and the blending of subsequent events and ideas .with earlier and separate transactions, rank very high as evidence (Law v. Merrills, 6 Wend. 268; 1 Greenleaf’s Ev. [13th Ed.] note to § 200; Learned v. Tillotson, per Sedgwick, Ch. J., at the special term of the superior court).
*403 If conceded facts and the behavior of the parties make one or the other version of a conversation the mere probable, that version ought ordinarily to be adopted.
It is admitted that plaintiff was offered a partnership and declined the offer. It is plain that neither party at the interview of March, 1881, supposed that the plaintiff had become a partner. The plaintiff was to receive as compensation $3,000 and 10 percent, of the profits,—precisely what he had in Mr. Freneau’s lifetime. His services were presumably no less valuable and necessary to the new than to the old firm. It is not claimed that he was to have any share of the profits for his money beyond 6 per cent, interest upon it'. But he had had 6 per cent, interest upon the money in Mr. Freneau’s lifetime, and would, as matter of course, continue to receive the same interest so long as the principal remained unpaid ; and I cannot think that the plaintiff put his money at a different and far greater risk than it had been, without receiving some additional advantage. When the plaintiff asked Mr. Hawkins, in August, 1881, for some of the principal sum, both acted as if the plaintiff made a claim, which it was simply inconvenient for Mr. Hawkins to meet, and not as if the plaintiff made a claim in violation of the agreement between them. I do" not doubt that Messrs. Hawkins & Brainerd, in or about March, 1881, found from the plaintiff that he did not then require his money. I do not doubt that the plaintiff’s relations to Messrs. Hawkins & Brainerd disinclined him to insist upon the payment of his money. But I cannot find upon the evidence, that the plaintiff made any agreement which would debar him from demanding and at law recovering the money from Messrs. Hawkins & Brainerd. The estate of the deceased partner as surety has not therefore any valid ground of complaint of the plaintiff’s dealings with the surviving partners.
It is conceded that the apparent amounts of the plaintiff’s ten per cent, of the profits of the original firm of P. L. Freneau & Co. were $2,761.55 for 1879, aud $2,748.90 for 1880: and that those amounts were credited to him as *404 shown, by the books of that firm. The defendant insists that these were not actual but estimated profits; and that the actual profits were about 65 per cent, of the amount of the apparent profits. I think the burden was upon the defendant to establish, if it could be done, what deduction should be made from the profits as shown by the books of Mr. Freneau’s firm.
Butler, Stillman & Hubbard, and A. H. Joline, for appellant.
—Where an old firm has been dissolved and a new firm has agreed to assume its liabilities, but slight circumstances are required to justify finding an intention on the part of a creditor of the old firm, who had notice of the dissolution and of the agreement by the new firm to accept the liability of the old firm in place of the liability of the old (Regester v. Dodge, 61 How. Pr. 107; Ex parte Williams, Buck. 13; In re Smith, Knight & Co., L. R. 4 Ch. App. 66; In re Family Endowment Soc., L. R. 5 Ch. App. 118; Bank of Australasia v. Flower, 1 L. R. [P. C.] 27). *405 A creditor who assents to a transfer of his debt from an old firm to a new firm and goes on dealing with the latter for some time, making no demand for payment against the old firm, may not unfairly be inferred to have discharged the firm, “ and if the question arises in equity, upon an attempt to have recourse to the estate of a deceased partner, the court will consider all the circumstances of the case and decline to assist the creditor if, upon the whole, justice to all parties so requires ” (Collyer Partn. § 570 [note p. 557, 2d Am. Ed.]; Ex parte Kendal, 17 Vesey, 522, 525; Oakley v. Pusheller, 4 Cl. & Fin. 207; Brown v. Gordon, 16 Bear. 302; 1 Lindsley Partn. 366, 367). The dictum of Chancellor Kent in Hamersley v. Lambert (2 Johns. Ch. 508), is not in accordance with the later decisions, and is not authorized in its extent by either cases or principles (Fisher v. Tucker, 1 McCord's Ch. 173; Collyer Partn. § 600, note).
*404 The payment of $139.38 on February 6, 1882, was, I think, plainly intended as a payment upon the debt of the old firm. It was that debt which was discussed between the plaintiff and Mr. Hawkins at the time of that payment. That sum will therefore be deducted from the plaintiff’s recovery.
There is, perhaps, some ground for plaintiff’s contention that because in equity costs are in the discretion of the court, they should even in an action against an administrator be directly allowed or disallowed by a referee who is to hear and determine all the issues. I do not, however, find that a distinction in this respect between equitable and common law actions against an administrator or executor has ever been clearly established; and there are a number of cases which in general terms state it to be' the duty of The referee to simply certify the facts, leaving the award or refusal of cost to ■ the court. I have therefore deemed it the wiser course not to decide the question of costs, but to include in the findings such a certificate.
*405 The referee’s distinctions, (1) that the defense in this case was “not that plaintiff took Hawkins and Brainerd as his sole debtors,” and (2) that the case was not that of a retiring partner, but of a deceased partner, are not substantial. (1.) The defense in the case was that the plaintiff took Hawkins and Brainerd as his sole debtors. There was a novation—a substitution of a new obligation for an old one. (2) “The same.acts of the creditor which operate in discharge of the-retiring partner will be equally effectual in favor of the deceased partner’s estate ” (Collyer Partn. § 595).
Bagley & Thain, for respondent.
Per Curiam.
—The principal question in the case, is whether the referee erred in certain findings of fact. The result of the examination of the evidence is, that the court does not come to different conclusions from those reached by the referee. The exceptions to the admission of testimony are not sustained. The opinion of the referee discusses satisfactorily the law and the facts of the case.
Judgment affirmed, with costs.