## HAWKS *vs.* HINCHCLIFF.

The plaintiff, having a debt against H. & M., took, as collateral security for the payment thereof, two promissory notes made by M. & C., payable in two and three months, and transferred one of the notes to G. R. C., who brought an action and obtained a judgment thereon; the other note was prosecuted to judgment by the plaintiff, and both judgments were afterwards assigned by the respective plaintiffs to P. It did not appear upon what terms or conditions the first note was transferred to G. R. C., and the judgment upon it assigned to P., nor upon what terms the other judgment was assigned to P. by the plaintiff. *Held*, that the presumption was, that the note and judgments were transferred absolutely and without recourse to the plaintiff; and that consequently the principal debt must be regarded as satisfied to the plaintiff out of the collateral securities.

*Held also*, that the presumption was, that the note and judgments were transferred for the full amount appearing to be due upon them; but that even if they were transferred for a less amount, it would be at the plaintiff's loss, and he would be regarded as having elected to accept satisfaction out of the collaterals, and would be bound by such election; and could not be permitted afterwards to resort to the principal debt, to recover any deficiency.

A creditor holds all collateral securities as the agent or trustee of his debtor, to be collected for the benefit of the latter, in discharge of the principal debt, and to be surrendered whenever such principal debt is paid, before resort is had to the securities. And if he undertakes to transfer them to third persons, without the authority of the principal debtor, the law will hold that he has elected to take them at the amount due upon their face, in satisfaction, to that extent, of the principal debt.

A judgment upon a security held as collateral does not merge or extinguish the principal debt.

Where one of several partners unites with a third person in making a note to a creditor of the firm, for a partnership debt, which, by the agreement, is made and accepted not for the debt, but as collateral security merely, a judgment recovered upon the note will not merge or affect the original indebtedness, even as to the partner signing the note. The agreement, in such a case, will control, and prevent a merger.

And so when, from the nature of the transaction, the law would adjudge the new obligation to be merely collateral.

The mere taking of the notes of third persons, on time, as collateral security for the debt of another, will not operate to discharge the debtor; the right of action upon the original debt not being suspended.

THIS was an appeal by the defendant from a judgment entered at special term. The action was for goods, wares and

merchandise sold and delivered to the defendant. The answer denied that there was any indebtedness on the part of the defendant. The defendant then alleged, that previous to the month of October, in the year 1846, he and one Samuel Milman were partners, doing business in the city of Rochester, and as such partners they became indebted to the plaintiff for the purchase of certain goods, wares and merchandise, but to what amount the defendant was unable to state; that said indebtedness was by an open book account. That in or about the month of October, in the year 1846, he, the defendant, sold out his interest in the said firm or partnership, to one Robert Carpenter, who, in consideration of such sale, agreed to pay the debt due by the said firm to the plaintiff; and the plaintiff agreed to take the new firm of Milman & Carpenter for said debt, and discharge the defendant from all liability on account of the same. That in the month of October, 1846, he, the defendant, in pursuance of said sale, transferred all his interest in said firm to Carpenter, who, together with Milman, subsequently carried on the business of said firm. That Milman & Carpenter, between the month of October, 1846, and the 18th of January, 1847, made repeated payments to the plaintiff on said indebtedness; that on the 18th of January, 1847, the plaintiff, in pursuance of the agreement to accept the new firm of Milman & Carpenter for the debt due from Milman and the defendant, took from the said Milman & Carpenter two promissory notes, one for one hundred dollars, payable in two months from date, and one for ninety-four dollars and ninety-six cents, payable in three months; that the amount remaining unpaid of the former indebtedness of the defendant and Milman to the plaintiff, as before stated, was included in said notes or one of them; that the plaintiff, after the giving of the aforesaid note of one hundred dollars, and before the same became due, sold, indorsed and transferred the same, for a valuable consideration, to one George R. Clarke, and that Clarke afterwards sued the same in the Monroe common pleas, and on the 3d of April, 1847, recovered a judgment thereon against Milman & Carpenter and the plaintiff; and that the said judgment was subsequently assigned to one Pringle; that

the plaintiff commenced a suit in the Monroe common pleas against Milman & Carpenter, on the aforesaid note of ninety-four dollars and ninety-six cents, and recovered a judgment against them thereon on the 6th day of May, 1847, and that the plaintiff afterwards assigned the said judgment to J. Thompson, jun., who afterwards assigned the same to Prindle ; that the plaintiff took the said notes for the purpose aforesaid, and gave the time therein specified without the consent of the defendant ; that the amount for which this suit was brought against him was the same amount which was embraced in the two notes before stated ; that the indebtedness for which this suit was brought, if any, was a joint indebtedness of the defendant and one Samuel Milman, who was not made a party to this suit, and the defendant insisted that the said Milman ought to be made a de- fendant. .

The cause was referred to a referee, who found the following facts : That the defendant and one Samuel Milman, composing the firm of Milman & Hinchcliff, were on the first day of Oc- tober, 1846, indebted to the plaintiff in the sum of $236.17, for goods, wares and merchandise, sold and delivered, as stated in the complaint, which the said Hinchcliff, on or before said 1st day of October, 1846, promised to pay ; that Milman was on the 28th day of May, 1852, and before this suit was commenced, duly discharged of and from all his debts, as an insolvent debtor, by the county judge of Monroe county ; that no part of said in- debtedness had been paid except the sum of $60, which was paid on the 1st day of October, 1846 ; that some time in the month of October, 1846, the copartnership of Milman & Hinch- cliff was dissolved, and that one Robert Carpenter succeeded to the rights of the defendant in said copartnership, and entered into said copartnership with Milman, and that it was agreed be- tween Milman & Carpenter and Hinchcliff, that Milman & Carpenter should assume and pay off the debts owing by the firm of Milman & Hinchcliff ; that said firm of Milman & Car- penter continued to purchase goods of the plaintiff upon credit; and on the 18th day of January, 1847, the plaintiff received from Milman & Carpenter two notes, one for $100, and one for

$94.96, payable in two and three months respectively, in which notes the foregoing indebtedness of Milman & Hinchcliff, or the balance thereof, was included; that the said notes were not taken in payment of said indebtedness, but as collateral security, and that there was no agreement made to give time upon the original debt; that the plaintiff transferred the said note of $100 to one George R. Clarke, who subsequently brought a suit upon the same, and on the 3d day of April, 1847, recovered a judgment in the Monroe common pleas, against the said Milman & Carpenter, for the amount of said note with costs, and which judgment was, before the commencement of this suit by said Clarke, assigned to one William C. Prindle; that the plaintiff brought a suit against said Milman & Carpenter on the other of said notes, and on the 6th day of May, 1847, recovered a judgment in the Monroe common pleas, thereon, against the said Milman & Carpenter, and that said judgment was afterwards, and before the commencement of this suit, assigned to said Prindle; that the taking of said notes by the plaintiff was without the knowledge or consent of the defendant; and also, that the said Milman & Carpenter had not, nor had either of them, ever paid said notes or judgment, or any part thereof. Wherefore, the referee found, as matter of law, that the plaintiff could maintain this action against the defendant without making Milman a party defendant; and he also found, as matter of law, that none of the foregoing facts amounted to a discharge or release of the said defendant, or to a payment of said indebtedness, and that the plaintiff was entitled to recover against the defendant the sum of $176.17, with interest from the 1st day of October, 1846, amounting in the whole to the sum of $258.48.

*E. Griffin,* for the appellant. I. The plaintiff having taken the notes of Milman & Carpenter from the amount due from Milman & Hinchcliff, and transferred one to George R. Clarke, and judgment having been obtained upon them both, the plaintiff cannot now sue the defendant. A judgment against one partner of the firm discharges the other.

(*Robertson* v. *Smith and others*, 18 *John. Rep.* 459.   6 *Barb.* 19.   5 *Hill*, 82, 85, 135.   1 *Denio*, 225.   4 *John. Rep.* 566.) II. After the defendant Hinchcliff retired from the firm of Milman & Hinchcliff, and Carpenter took his place, under an agreement that the new firm of Milman & Carpenter should pay his account, and this agreement being known to the plaintiff Hawks, Hinchcliff afterwards stood in the light of a security for Milman & Carpenter for the payment of this debt to the plaintiff, and the plaintiff having taken the notes of Milman & Carpenter for this debt, on time, without the knowledge or assent of the defendant, the defendant was therefore discharged.  (13 *Wend.* 375.   7 *Paige*, 451.   3 *Den.* 512.   2 *John. Ch.* 227. 4 *Paige*, 481.   6 *Barb.* 470.)

*W. F. Cogswell*, for the respondent. I. The first point that arises, is whether the action was properly against Hinchcliff alone. The plaintiff insists that when for any reason an action cannot be sustained against one of several joint debtors, the action is well brought against the remainder. (6 *Howard's Pr. Rep.* 167. *Chitty on Plead.* 40, *ed. of* 1809.) II. Whether this is so or not, the defendant cannot take advantage of the non-joinder of Milman, having answered in chief. III. The original account against Milman & Hinchcliff was not paid or extinguished by the taking of the notes of Milman & Carpenter. These notes were given for a different amount than the original indebtedness, by different persons than the original debtors, and were taken simply as collateral. The taking of the note of one of several joint debtors or of one of several joint debtors and a third person, does not amount to a payment or extinguishment of a prior indebtedness, unless it be expressly so agreed. (5 *John.* 68. 6 *Barb.* 664, 7 *John.* 311.) Where the note of a third person is agreed to be received as payment, the same will be held to be payment. (21 *Wend.* 450. 5 *Hill*, 448. 2 *Denio*, 410.) The note of one of several joint debtors, although expressly agreed to be taken in full, will not amount to a satisfaction of the original debt. (1 *Hill*, 516. 5 *Barb.* 398.) From this it follows that the note of Milman & Carpenter did not amount to payment of the original account. It

did not amount to an extinguishment of it, for the reasons following: Because the note of Milman & Carpenter was a security of no higher nature than the original indebtedness, which does not work an extinguishment. (1 *Comst.* 496. 11 *John.* 513.) Because it was taken as collateral merely, and if so it would not work an extinguishment, even if of a higher nature. (14 *John.* 404. 1 *Comst.* 496.) That it was taken as collateral appears by the finding of the referee, as matter of fact, by the receipt given on taking, and is inferred as matter of law from the fact that the new security is between different parties, includes other debts, and is not for the original account. (14 *John.* 404. 2 *Hill,* 339.) IV. The judgments entered upon these notes do not extinguish or in any way affect this original indebtedness of Milman & Hinchcliff, because, as has already been shown, the notes of Milman & Carpenter were only collateral security to the original indebtedness. If the account against M. & H. did not become extinguished by the taking of M. & C.'s note, then a judgment upon that note would not extinguish it. It is laid down as clear law by Johnson, J., in the case of *Butler* v. *Miller,* (1 *Comst.* 496,) that a judgment upon the *principal indebtedness* does not affect collateral securities. The doctrine seems to be well established by the cases cited below, that a judgment upon one of several concurrent remedies does not affect those remaining. In 13 *John.* 240, it was held that judgment upon a covenant to pay rent did not affect the right to distrain. In *Davis* v. *Anable,* (2 *Hill,* 339,) it was held that a bond between other parties besides those in court, and including other demands besides the debt in suit, is not, nor is the judgment upon it, an extinguishment of a single contract debt. Bronson, J., says, " The bond was not between the same parties that are now before the court, and it was not given for this debt alone, but included other demands. It was evidently intended as collateral security for the debts included in it, and such security, though of a higher nature, does not extinguish a simple contract debt. The fact that the bond has been carried into judgment, adds no force to the defense. There is no averment that either the bond or the judgment was accepted in satisfaction of this debt, or that they

have produced satisfaction." The case of *Drake* v. *Mitchell and others*, (3 *East*, 251,) was this : one of three joint covenantors gave his bill of exchange for part of a debt secured by the covenant, on which bill a judgment was recovered. It was decided that the judgment was no bar to the action on the covenant against the three, it not being averred that the bill was accepted as satisfaction, or to have produced it in fact. Le Blanc, J. said : "The giving of another security which *in itself* would not operate the extinguishment of the original one, cannot operate as such by being pursued to judgment, unless it produce the fruit of a judgment." This case is quoted with approbation in all the cases above cited. The cases upon which the counsel relies, will all be found to be cases where judgment has been recovered against one or more of several joint debtors, upon the original consideration, which is held to extinguish it, so that no action can be brought afterwards against the others thereon ; or where the creditor has taken a new security absolutely, in payment, from one of several debtors, which is subsequently extinguished in a judgment. There is one case that seems to sustain this last doctrine, but it is submitted that it is not law, and cannot be sustained, and that the rule is, as laid down in the cases above, that the judgment must be satisfied before it can produce this effect. But however that is, it does not touch the case at bar, which is the receipt of a note as collateral security, made by other parties than those before the court, and including other debts. V. The third point made by the defendant in this case, that the notes must be presumed to be paid, is answered by the admission that they never were paid. VI. The next point made by the defendant is this : that by the agreement between Milman, Hinchcliff and Carpenter, Carpenter became the principal debtor and Hinchcliff a surety ; that the fact that he was his surety was known to the plaintiff, who has extended the time of payment, and thereby discharged the surety. To sustain this point the following facts are necessary : 1st. That the relation of principal and surety between Hinchcliff and Carpenter existed. 2d. That the plaintiff had knowledge of it. 3d. That the plaintiff has, by valid agreement, founded upon a valid consideration, ex-

tended the time of payment. It is submitted that neither of these propositions, except the second, can be maintained. First. The relation of principal and surety, so far as the creditors of the partnership are concerned, did not exist. In 2 *A. K. Marshall*, 277, the same question is presented that is raised here, so far as this question is concerned. The partnership had been dissolved, one partner agreeing to pay all the debts, of which the creditor had notice, who took such partner's note at three months, to be in full when paid. On a suit brought for the original indebtedness, the retiring partner set up the same defense set up here. Mills, J., says, to the circumstance of the dissolution of the copartnership in the present case and Crawford's engagement to pay all the debts, the court attaches no importance; these were matters over which the creditor had no control. As to creditors, it was *res inter alios actæ*. Speaking of releasing the debt by the giving time to the principal, the learned judge says this doctrine cannot be applied to the case of joint debtors, as partners are, when the debt is contracted for the equal benefit of both, and when each is originally liable for the whole demand. Second. If the relation of principal and surety existed, the plaintiff undoubtedly knew of it. But, third. We submit that he has never made any agreement to extend the time; and that if he has, it was founded upon no consideration, and was therefore void. He has made no agreement to extend the time. The referee has found so, as matter of fact. The defendant has not averred any agreement to extend the time, and there is not any evidence that tends to prove any such thing. The receipt certainly contains no such agreement; there are no contracting words in it; it is merely evidence furnished to show that when those notes were paid, the account would be satisfied. How could the facts stated in that receipt amount to a bar to an action against Milman & Carpenter for goods sold? Not as payment, certainly, because they were not received as such; not that the debt was not yet due, because the debt was due; and this was only another form of promising to pay the debt, for which these same parties were already liable. But we are not without authority upon this subject. It was held in

---

Hawks *v.* Hinchcliff.

---

11 *Wendell,* 312, that the taking of a note payable at a future day, from a principal debtor, did not discharge the surety, for four reasons, two of which were as follows : " An agreement to give time could not be implied from the postponed day of payment specified in the note. 2d. There was no agreement to give time." In 5 *Barbour,* 398, it was held that the taking of a note from the principal debtor, payable at a future time, did not extend the time of the payment of the original note. Paige, J., says, " The counsel for the defendant made a point that the giving of the new note extended the time for the payment of the original note, and thereby discharged the surety. There being no agreement to extend the time of payment, the new note could not have that effect. It is. now the settled doctrine, that the taking a new security from the principal debtor for a debt past due, payable at a future day, without an agreement to extend the time of payment, does not discharge the surety. The new notes can only be regarded as a new or collateral security for the old." 6 *Howard's U. S. Rep.* 279, holds the same doctrine. If the defendant could maintain his proposition that there was an agreement to give time, when he had neither averred nor proved it, he could then be met with this objection, that such agreement was without consideration and void. An agreement to extend the time of the payment of the principal debt, must, in order to discharge the surety, be made upon a valuable consideration. An agreement founded upon an usurious consideration will not work a discharge of the surety. So an agreement founded upon the promise of the principal to pay the debt which he is already liable to pay, will not furnish a consideration that will sustain the agreement. In 11 *Wendell* 318, Nelson, justice, says : " The giving of the note therefor was no benefit to her, (the plaintiff,) for she already had a higher and better security ; and for the same reason it was no injury to Gahn (the principal debtor.) He was already liable on his bond. There was, therefore, no consideration of benefit on the one side or injury on the other, to give effect to the implied promise of delay relied on. By new security the court must have intended one beyond that which the party already had ; for though a new

Hawks *v.* Hinchcliff.

security be given, and which would afford the creditor a new remedy by it, if it was no better than the one the party already had, it was obvious that it would constitute no consideration for a promise to delay the collection of the debt." The notes of Milman & Carpenter were no more, therefore, than a new promise to pay an old debt. They were already bound, and had agreed to do what they now again agreed to do. This new promise gave the plaintiff no new rights, and imposed upon Carpenter no new obligations. In short, this was a case of a creditor taking a new and collateral security, payable at a future day, for the original debt, without any agreement to give time. Clearly, this cannot discharge any body. The referee decides, as matter of fact, that it was collateral to the principal debt, and that there was no agreement to give time, both which must be found the other way before the law relied upon by the defendant is applicable. We submit that the finding is right, and that, according to the facts as found, there can be no doubt as to the law of the case.

*By the Court,* JOHNSON, J. I do not see any ground, upon the facts appearing in the case, on which the plaintiff's recovery can be sustained. Because, conceding that the notes taken by the plaintiff of Milman & Carpenter, for the debt of the defendant and Milman, were taken expressly as collateral security, and did not in any way operate as payment or merger of the original indebtedness, still it appears that the plaintiff transferred one of the notes, upon which the holder brought his action and obtained a judgment, and that the other was prosecuted to judgment by the plaintiff himself, and that both judgments were afterwards, and before the commencement of this action, assigned by the respective plaintiffs to one Prindle. It does not appear upon what terms or conditions the first note was transferred to Clarke, and the judgment upon it assigned by Clarke to Prindle. Nor upon what terms the judgement was assigned to Prindle by the plaintiff.

The intendment I think upon this state of facts is, that the transfers were absolute, and without recourse to the plaintiff.

This being so, the principal debt must be regarded as satisfied to the plaintiff out of the collateral securities. The presumption, where nothing appears to the contrary, will be that they were transferred for the full amount appearing to be due upon their face. But should it appear that the creditor sold them for less than their face, I am of opinion it would be at his own loss, and that he would be regarded as having elected to accept satisfaction out of the collaterals, and would be bound by such election, and could not be permitted afterwards to resort to the principal debt to recover any deficiency, as he could where partial satisfaction had been obtained from collateral securities by due course and process of law.

The creditor holds all collateral securities as the agent or trustee of his debtor, to be collected for the benefit of the latter, in discharge of the principal debt, and to be surrendered whenever such principal debt is paid, before resort to the securities is had. And whenever he undertakes to transfer them to third persons, without the authority of the principal debtor, the law, I think, will hold that he has elected to take them at their face, in satisfaction to that extent, of the principal debt. Whether a transfer by the creditor with a guaranty that the securities were collectible, so as to give the assignee a remedy over upon the assignor in case he failed to collect, and the assignor was compelled to respond upon his guaranty, would not affect the principal, I shall not stop to enquire, as there is nothing in the case to raise the question. I think it may be doubted, however, whether it would, as in such a case the creditor might be regarded as pledging his personal responsibility on his own account instead of his debtor's.

It is of no consequence whatever that these judgments had been reassigned to the plaintiff. As the case stands the reassignment to him must be regarded as having been made upon some new and distinct agreement between him and the owner, which would not in any degree aid in restoring the plaintiff to his former rights. Upon this ground alone the judgment must be reversed, and a new trial ordered. As this point, however, was not much pressed by the defendant's counsel, and the chief

stress of the argument was upon the other points, I proceed to consider them, as there may be facts in the case known to counsel, and upon the assumption of which the cause was tried, and which do not therefore appear in the case. The defendants counsel contends, that independent of the question of transfer, from the fact that the plaintiff took the notes of Milman & Carpenter for the partnership debt of the defendant and Milman, and that those notes have been prosecuted to judgment, the debt is merged in the judgment, as to Milman, and neither he nor the defendant can be prosecuted upon the original indebtedness. The principle seems to be well settled by numerous adjudications in our own state, that where a note is given in the name of the firm or by one of several parties, for a partnership debt, and a portion only of the partners are prosecuted upon such note and judgment obtained against them, the original debt is merged in the judgment, and the creditor cannot afterwards maintain an action either against all the members of the firm collectively or against those not included in the former action, upon the original indebtedness. And so where one of several is prosecuted to judgment on a joint undertaking. (*Peters* v. *Sanford*, 1 *Denio*, 224. *Robertson* v. *Smith*, 18 *John*. 459. *Averill* v. *Loucks*, 6 *Barb*. 19. *Peirce* v. *Kearney*, 5 *Hill*, 82. *Id*. 135. *Frisbie* v. *Larned*, 21 *Wend*. 450.)

These decisions do not proceed upon the ground that the giving of the note operates as a payment and satisfaction of the debt, but upon the ground that the original debt is merged in the judgment as to those who are made parties, and the right of action against them upon the original indebtedness gone, and that the joint liability being at an end by the act of the plaintiff, any one may avail himself of this merger or suspension of the right of action, by way of defense. But I apprehend this principle will not apply where one of several partners unites with a third person in making a note to a creditor of the firm for a partnership debt, which by the agreement is made and accepted not for the debt but as collateral security merely. In such a case a judgement upon the note would not, I think, merge or affect the original indebtedness, even as to the partner

signing the note.   The agreement in such a case would control and prevent a merger.   (*Butler* v. *Miller*, 1 *Comst.* 496.)   And so when from the nature of the transaction the law would adjudge the new obligation to be merely collateral.   This principle is illustrated by the case of *Davis* v. *Anable* (2 *Hill*, 339.) Indeed, it is clear upon principle, and has often been held, that a judgment upon a security held as collateral does not merge or extinguish the principal debt.   The decision in the case of *Davis* v. *Anable* was placed upon the ground that the bond which was alleged to have been taken, and upon which judgment had been rendered, was intended as a collateral security merely. And this seems to have been inferred from the fact that debts other than those of the defendants were included, and the bond was given not to the creditor of the defendants alone, but to him and to other persons who, for aught that appears, were strangers to the defendants.   I am not aware that it has ever been held, that where one of several partners gives his note for a partnership debt, such note is to be regarded in law as a collateral security merely, although it did not operate as payment.   On the contrary, the cases first cited go to show that such a note is so far a part and parcel of the original debt, that a judgment upon it merges the debt as to the maker, and extinguishes the joint liability of the partners.   This, I apprehend, proceeds upon the principle that such a note operates as a statement of the account, or the striking of a balance, and as a conditional payment merely, and not as a collateral security.   When nothing is shown except the taking of the note for or upon the account, it is taken in judgment of law as a conditional payment.   (*Van Eps* v. *Dillaye*, 6 *Barb.* 244.   *Waydell* v. *Luer*, 3 *Denio*, 410.)

The referee has found as a fact that the note in question was taken as a collateral security merely.   Whether he finds such was actually the agreement between the parties, or whether he infers it from the other facts in the case, does not distinctly appear.   I do not readily perceive upon what evidence in the case it can be regarded as established affirmatively that the note in this case was made and accepted as collateral security merely.

Hawks *v.* Hinchcliff.

The receipt shows that it was not to operate as a payment of the account until paid. But in this respect, upon the evidence furnished by the receipt, for aught that appears, it was designed to have the same force and effect as any note given by one partner for a partnership debt where there was no agreement that it should be accepted as a payment.

This is a different case from that of *Davis* v. *Anable*. In this case Carpenter purchased the interest of the defendant in the partnership stock and agreed to pay the debts. This was known to the plaintiff, who continued dealing with the new firm the same as he had with the old. In fact, the additional debt included in the notes was but a continuation of the account. For aught I am able to see, the notes were intended to cover and embrace the whole account—the old as well as the new—as the debt of the makers of the notes, but not to operate as a payment and satisfaction of any part of the account until they were paid. Upon these facts alone, I am of opinion that the law would not hold that the notes were made and accepted as collateral security, but as an adjustment and conditional payment of the account merely. Had Milman alone signed the notes, under the same circumstances, it seems clear, within the authority of the foregoing cases, that a judgment upon them against him would have discharged both Carpenter and the defendant. I confess I am unable to perceive how the fact that Carpenter, who was to all intents and purposes a party to the debt, joined with Milman in making the note, can alter the principle. It seems to me the note was not collateral in this case, any more than it would have been had Milman signed it alone. I admit that the parties could control this by their agreement at the time the note was delivered; and if there is any evidence that such an agreement was made, the parties are bound by it, and the judgments upon the notes have not affected the original debt. Otherwise if there is no evidence in the case of any particular agreement, except the making and delivery of the notes to the plaintiff and the receipt.

This view, I think, goes far toward reconciling the cases cited, upon the argument, which at first view seem directly in conflict with each other.

---

The mere taking of the notes by the plaintiff on time did not operate to discharge the defendant. The notes, according to the finding, were taken as a collateral security, and the right of action was not suspended, upon the account, in that view, either before or after the judgment, until satisfaction.

Judgment of special term reversed. New trial ordered; costs to abide the event.

[Monroe General Term, March 6, 1854. *Selden, Welles* and *Johnson,* Justices.]