## HILL *v.* MARCY & a.

When some of the members of a partnership retired, and the others continued the business under the same firm name, a promissory note given by the new firm for a note of the old firm, the payee being ignorant of the change, will not be deemed payment.

The giving of such note operates as payment upon condition that the note proves to be productive, and if the creditor makes an absolute sale and transfer of the note or of a judgment upon it, without the assent of the old firm, and then treats it as his own, he must be deemed to have elected to take it as payment, even if he receive less than the amount due upon it.

ASSUMPSIT on a note made by Joshua Marcy, Isaac S. Marcy,

---

ing the report of a committee appointed by him to make division of land between appellant and appellee, who are co-devisees under the will of Fraiser.

Appellant claims the title was in dispute, and the judge of probate on that account had no jurisdiction.   R. S. ch. 167, sec. 1, authorize the judge of probate to cause the dower and share of the widow, and the shares of any or all of the heirs or devisees in the real estate of any person deceased, &c., to be divided.   Ch. 206, secs. 1 & 2, authorizes partition in favor of persons holding real estate with others, on petition to the supreme court, and sec. 21 provides that if there is no dispute about the title, the petition may be directed to the judge of probate.   In *Kelly* v. *Kelly*, 41 N. H. 501, it was understood the judge of probate had jurisdiction of petition for division between co-heirs or co-devisees, and that it was only in other cases that he had not jurisdiction when the title was in controversy ; and we think it is the true construction of the statute.   The limitation of probate jurisdiction is in the chapter of partition, and seems only to relate to the subject-matter of the chapter.   Division and partition seem to be recognized by the statute as proceedings adapted to different sources of title, and as appellee's counsel argue, there would seem to be an appropriateness and completeness of system in having the proceedings for the division of the real as well as the personal estate of a deceased person in the probate court, whether the co-heirs or co-devisees were agreed as to the quantity of their shares or not; a consideration properly bearing upon the construction of the statute.   We think that the dispute about the title, did not oust the probate court of jurisdiction.     *     *     *     *     *     *

Decree of judge of probate affirmed."

*Clark, George, Foster & Sanborn*, for plaintiff.

*Minot & Mugridge*, for defendant.

The framer of the act referred to, certainly did not intend to disturb the practical and salutary doctrine of *Phillips* v. *Perry*.

REPORTER.

Charles C. Marcy, Salmon Sawyer, Eliza M. Sawyer, partners in the firm of J. Marcy & Co., to David W. Hills. After the note was given, the two Sawyers retired from the defendant firm, but the name of the firm was not changed. A writ was made against the new firm in favor of one Brown, and another in favor of one Butler, plaintiff being ignorant of the change in the firm, and of the making of said writs, and of the probable failure of the new firm, upon the application of Joshua Marcy, gave up to him the note in suit, receiving a small amount of money and a new note signed J. Marcy & Co., the money and new note being the amount of the old note. At that time, and always since, the Sawyers were good and responsible. Afterwards, J. Marcy caused suits to be brought against the new firm in favor of all their creditors, including a suit in favor of plaintiff on the new note, the writ bearing date as of the same day as the note, and caused attachments to be made in classes. The attachment in the suit in favor of plaintiff was among the last, and but a small part of the judgment which he obtained, was satisfied. One W. W. Hill, who acted as agent for J. Marcy & Co., bought said judgment of plaintiff at a large discount, and plaintiff assigned it to him, and he assigned it to J. Marcy & Co. In this suit, plaintiff claims to recover the difference between the amount of the note in suit, and the amount he has received. The court ruled *pro forma*, that plaintiff could not recover, and plaintiff excepted.

*Morrison & Stanley*, for plaintiff.

This action is brought to recover the balance of a note made by the defendants as partners, which was given up and for which a new note of a different firm was substituted, and the question is, can the suit be maintained? The note never was, in fact, paid. There was simply an exchange of a note against a good and responsible firm for a note of a firm which was in failing circumstances. It is well settled in numerous cases in this state that the taking of a promissory note is in no case the payment of a pre-existing debt, unless there is an agreement to that effect between the parties. *Smith* v. *Smith*, 27 N. H. 244; *Wright* v. *First Crockery Ware Co.*, 1 N. H. 281; *Foster* v. *Hill*, 36 N. H. 528; *Johnson* v. *Cleaves*, 15 N. H. 332. The authorities in this state upon this point, are numerous and all one way. The old note then, the balance of which is claimed in this suit, was never paid. There was no agreement between the parties that the new one should be received in payment, and the presumption from the facts reported by the court, is against any such agreement. The case finds that the Sawyers, members of the old firm and defendants in this suit, were responsible, and it must be presumed that the new firm were in a failing condition when the exchange was made, for as the case finds one of the defendants caused a suit to be brought on the new note on the very day it was given. Upon this state of facts and upon the law applicable to them, it is clear that there was no agreement to receive the new note as pay-

ment. The burden of proof is on the defendants to show that the new note was taken as payment, which they failed utterly to do. The new note then not being shown to have been received as payment, the plaintiff is clearly entitled to recover the balance due him over and above the amount realized on the new note. The fact of a judgment having been recovered on the new note, can make no difference, "for that is only a security for the original cause of action until it is satisfied, and there must be either a satisfaction or the demand on which the judgment was recovered must have been accepted in satisfaction of the original cause of action." *Johnson* v. *Cleaves*, 15 N. H. 335, and authorities there cited. It may be urged that the plaintiff assigned the judgment obtained on the new note and therefore he cannot recover, but that objection cannot avail for it distinctly appears that the assignment was only a matter of form, that the amount which he received was in fact a payment *pro tanto* by the new firm. But did the case require it, we might go further, and ask the court to hold that as a matter of law a fraud was practiced upon the plaintiff by Joshua Marcy, a member of both the old and new firm, and so this exchange of notes was void. But we do not think this is necessary, because as we have seen the old note has never been paid in full, and never having been paid in full, the plaintiff is clearly entitled to recover the balance of it of these defendants, they being the makers.

*C. P. Sanborn*, for defendants.

There can be no question in this state that the taking of a promissory note is in no case the payment of a pre-existing debt, unless there is an agreement to that effect between the parties. But we claim upon the facts stated in this case that there was such an agreement and that the plaintiff is estopped to deny it by reason of his subsequent acts. If a negotiable note has been received as a conditional payment and has been passed to and is owned by a third person, the creditor cannot sue on the original contract. *Harris* v. *Johnston*, 3 Cranch 311 ; cited in *Wright* v. *Crockery Ware Co.*, 1 N.H. 381 ; the reason obviously being that having passed it beyond his control, the payment becomes absolute from that time. In this case the first note was exchanged for the second, suit was brought upon the latter, judgment upon it was entered up which was partly satisfied, and with full knowledge of the facts, or with legal negligence in not knowing them, an assignment of the manifested judgment was made by the plaintiff as effectually concluding his right to sue on the original contract, as though he had disposed of the second note by indorsement. David W. Hill could have discontinued the suit at any time, but allowing it to proceed to judgment and assigning that judgment, he is estopped to deny that by such assignment he settled his claim.

If fraud was practiced upon him by Joshua Marcy, he has his remedy against him, but it is not by denying the consequence of his own acts.

BELLOWS, C. J.   The law is understood to be well settled in this state that a negotiable promissory note, taken for and on account of a precedent debt, is not payment of that debt, unless it be so agreed by the parties ; and the burthen is upon the party asserting the fact of payment, to prove it.   The cases are numerous to this point, and are collected in Mor. Dig. 519, 520.

Whether this was such an agreement or not, is a question of fact for the jury in view of all the circumstances proved.   *Foster* v. *Hill,* 36 N. H. 526.   It is not necessary to prove an express agreement in words, but it is sufficient if the jury from the circumstances believe that the note was given and received as payment.   *Randlett* v. *Herren,* 20 N. H. 102 ; *Johnson* v. *Cleaves,* 15 N. H. 332.

So in the case of a dissolution of a firm by the death or retirement of some of the partners and a continuance of the business by the others in the same name, the giving and receiving of a note by the new firm, for a debt of the old firm, will not be payment, unless it was so agreed by the parties.   *Thompson* v. *Briggs,* 28 N. H. 40. In the case before us, two of the partners had retired, while the rest continued the business in the same firm name, and the creditor received the new note and gave up the old one, without any notice of the change in the firm.   On this state of facts, it is not contended that the new note can be regarded as payment of the other, but it is urged that the creditor has since so dealt with the new note as to make it payment ; that is, by assigning the judgment upon that note the plaintiff has put it beyond his control, and, therefore, the payment has become absolute.   And it is undoubtedly true in general, that if a negotiable promissory note is given for a precedent debt, and it is not to be taken as payment, because there was no agreement that it should be, it will at least operate to suspend all remedy on the original debt, until such note becomes due ; and a recovery cannot be had on that debt, until such note is produced to be canceled, or shown not to be in a condition to be enforced.   *Martindale* v. *Follet,* 1. N. H. 99, and this case is recognized as law, in *Smith* v. *Mace,* 44 N. H. 558, 560.

If, then, such note has been negotiated, and is outstanding in the hands of an indorsee who can enforce it against the maker, no recovery can be had upon the original cause of action ; otherwise the party may be obliged to pay his debt twice.   *Price* v. *Price,* 15 M. & W. 232 ; *Holmes & al.* v. *De Camp,* 1 Johns. Rep. 34 ; *Bendike* v. *Green,* 15 Johns. 247 ; *Hughes* v. *Wheeler,* 8 Cow. 77, 81 ; *Dayton* v. *Trull,* 23 Wend. 345 ; 2 Par. on Con. 151, and cases collected in note.   The New York cases hold, that no recovery can be had unless such note is produced or canceled at the trial.   By the law of Massachusetts, Maine and Vermont, as settled in their courts, a negotiable promissory note given in consideration of a simple contract debt, is a discharge of it, and the reason given for this doctrine is, that otherwise the debtor might be obliged to pay his debt twice to the creditor, and to an innocent indorsee of the note. Elsewhere such note is held not to be payment, unless so agreed by

the parties, but care is taken to protect the debtor from a double payment, by forbidding a recovery upon the original cause of action until he is secure against any liability on the note. The giving and receiving of the new note in this case, were nothing more than payment upon condition, that it proved to be productive, and the question is, whether the subsequent conduct of the plaintiff with the new note has made the payment absolute. The note was held by the direction of Joshua Marcy, a member of the new firm, and some property attached, subject to prior attachments; judgment was obtained against the new firm, and a small sum realized. The plaintiff then sold and assigned the judgment at a large discount to W. W. Hill, who acted as agent of J. Marcy & Co. If the plaintiff had been guilty of any laches in regard to this note, as the neglecting to present it, or to take reasonable and proper measures to obtain payment, when it might have been obtained, he would be charged with the amount of it. 2 Par. on Con. 154. So if, without the assent of the defendants, he disposed of the note or surrendered it, he would be charged with the value of it. *N. H. Savings Bank* v. *Colcord*, 15 N. H. 119. So, also, if the creditor had assigned the judgment to another, then so long as the assignee could enforce it against the debtors, the plaintiff would be unable to recover on the original cause of action. It appears, however, that the assignee in this case transferred the judgment to the new firm, and of course it can be no further enforced against them; but for aught we see, it must be regarded as extinguished.

The short of the matter then would seem to be, that this new note after it had passed into judgment, has been extinguished by the makers by paying a small portion of the amount, of which the plaintiff had the benefit, and the question is whether there is anything in the circumstances after assignment that will turn the transaction into an absolute payment.

It is settled, however, that the obtaining judgment on such note without satisfaction, does not discharge the original debt. *Drake* v. *Mitchell et al.*, 3 East. 251; 2 Parsons on Con. 155; *Tarleton et al.* v. *Allhusen et al.*, 2 A. & E. 32, and in the last cases, the bill had been endorsed over by the creditor, and the judgment was in the name of the indorsee, but afterwards taken back by the creditor. Neither will the transfer of such note or bill by the creditor, if he afterwards have to pay it, operate to discharge the original debt. 2 Parsons on Con. 155-6 and also 150 note *a* and cases.

The case of *Harris* v. *Johnson*, 3 Cranch. 311, goes upon the ground that the endorsee of the note received as conditional payment, still owned it, so that the debtor would be liable to make double satisfaction if a recovery could be had upon the original debt, and there is nothing in the opinion of the court tending to the position, that the payment is made absolute by the mere transfer, when the creditor had afterwards been compelled to take it up, and the remark in *Wright* v. *Crockery Ware Co.*, must have been subject to such qualification.

The plaintiff, in this case, parted with his interest in this judgment to W. W. Hills and is still held by him; as he could enforce it against the judgment debtors this action could not be sustained. But this assignment was obtained, it seems, for the benefit of the new firm, and in the end was formally made to them, so that the judgment must be regarded as extinguished, and in no condition to be farther enforced against them. If then, the members of the old firm, and especially those who had retired from it, assented to the assignment of this judgment for the sum actually paid, or if that sum was the fair value of that security and all that could be obtained for it with reasonable diligence and upon the whole was advantageous to all parties, we are inclined to think the plaintiff would be holder only for the amount so named. Such was the doctrine laid down by our court, as between pledgor and pledgee after a careful consideration of the authorities; in *Exeter Bank* v. *Gordon*, 8 N. H. 66, although a different doctrine is laid down in Story on Bailments, § 321, holding that the pledgee has no right to compromise with the party to the security, for a less sum than is due, and if he does, he will be compelled to account to the pledgor for the full value; to the same point is *Garlick* v. *James*, 12 Johns. 146. *Exeter Bank* v. *Gordon*, puts the case upon the ground that if the bank had wrongfully taken the note and converted it to their own use, they would have been answerable only for the value, and the bank could not, the court thinks, be deemed to be in a worse situation than mere wrong doers.

This case is a decisive authority in the case of pledgor and pledgee, but it does not follow that it must govern this case—which is a case of a conditional payment, not a pledge and although in most respects there is much similarity in the two cases, yet in some respects there is a material difference.

In the case of a pledge, no right of property passes to the pledgee, but the pledgor has the right to redeem it, while in the other case the debtor retains no such right, but the creditor may, if he elect to do so, make it his own and sell or dispose of it accordingly.

In *Cochran* v. *Webster*, 17 N. H. 205, it was held, that if the debt was lost by the negligence of the creditor he will be considered as having received it in satisfaction of the original deed and has elected to appropriate it in this manner. Upon the same principle it might be argued, that if he assumed the absolute ownership of the note and made a final and absolute sale of it, without retaining any connection with it as endorser, he had elected to make it his own and take it as payment. Such a fact would at least, be strong evidence that the note was so received.

In 2 Kent. Com. *583, it is said in note: If a note held as collateral security for a debt, is sold by the creditor, he is presumed to have taken it in payment of the debt, citing for this, *Locke* v. *Chancy*, 14 Ald. 65; *Hawks* v. *Hinchcliff*, 17 Barb. 492.

Where a factor, had received a note payable to himself for the goods of his principal, and afterwards released the indorser who had

failed and made an assignment, it was held that he made himself liable for it. *Deland* v. *A. W. & C. M. Co.*, 7 Pick. 244.

In *Hawks* v. *Hinchcliff*, there were two notes held as collateral security, and both were held and judgment obtained, one by the pledgee and the other by a person to whom he had transferred it; afterwards both judgments were assigned to another, but it did not appear on what terms. The court say, it is to be assumed that the assignment was absolute and without recourse, and that the principal debt must be regarded as satisfied out of the securities. That it would be so, even if sold for a less amount, and the reassignment of the judgments to plaintiff, would make no difference, for it must be assumed that was on a new agreement.

It was also held in that case, that when one of several parties gives his note for a partnership debt, it is not to be regarded as collateral security merely, although it does not operate as payment, but it is so far part and parcel of the original debt, that a judgment upon it merges the debt as to the maker, and extinguishes the joint liability of the partners. That the taking of the note would be regarded as a conditional payment—court cites *Waydell* v. *Law*, 3 Denio 410.

It is said to be settled in New York, that if one partner be sued on a partnership debt, and a judgment is obtained against him, the original debt is merged, and the creditor cannot afterwards sue all, or the rest of the partners, and this goes on the ground, that by the judgment against one, the joint liability is extinguished.

Independent of the authority of *Exeter Bank* v. *Gordon*, I think on principle and authority, that if a creditor who has received negotiable paper as his own for a precedent debt, assuming to treat it as his own, and in a manner inconsistent with holding it as conditional payment; that is, by making an absolute and definitive sale of it, he must be presumed to have taken it as payment.

This case, to be sure, may be much modified by showing an assent of the old firm to the disposition here made; but as the case now stands, we are inclined to think that by the absolute and definitive sale to W. W. Hills, the plaintiff must be deemed to have made the debt his own.

This conclusion is reached, without considering any question of fraud suggested in plaintiff's brief, for that cannot be found as matter of law on the facts stated.

*Exceptions overruled.*