MARY RAYNOR, APPELLANT, *v.* LUCY MARIA RAYNOR, AND OTHERS, RESPONDENTS.

*Foreclosure of a mortgage by advertisement—upon whom notices must be served—1844, ch. 346—who " a subsequent grantee" within—dower is to be based on the value of the land when alienated by the husband—effect of an assignment of a security without the debt to which it is collateral—computation of amount of mortgage from which the widow must redeem—when her dower to be charged on lands in the inverse order of their alienation.*

In March, 1840, Richard Raynor conveyed to Henry and Willett Raynor, for $15,000, a tract of land then subject to a mortgage for that amount given by him to the said grantees in December, 1835, to secure the payment of his bond in the same amount. At the time of the conveyance the said bond and mortgage, with others (amounting in all to $35,000), had been assigned by the mortgagees to an insurance company, to secure their bond for $25,603. In December, 1840, Willett and Henry Raynor made a general assignment of all their property, real and personal, in trust for the payment of their debts, and in 1843 they were discharged under the bankrupt act. The assignment was never recorded. In July, 1845, the company assigned the bond for $25,603, with the securities held as collateral to it, to one Horace White, who on the 5th of the following August assigned the $15,000 bond and mortgage (but not the bond for $25,603) to Hamilton White for $3,500. The latter foreclosed the mortgage by advertisement, claiming that there

was due, and to become due on it, $21,547, and purchased the land himself for $3,000. Notice of the sale was given to Richard, but none to Willett or Henry Raynor, nor to their wives.

Thereafter, the premises were, by various mesne conveyances, transferred to the defendant, Lucy Raynor, who prior to the commencement of this action had conveyed by warranty deeds portions thereof to certain of the other defendants. In 1870 Willett Raynor died, and thereafter this action was brought by the plaintiff, his widow, to recover her dower in an undivided one-half of the said land.

*Held*, that the plaintiff was a "subsequent grantee" within the meaning of ch. 346 of 1844, and that as no notice of the sale had been served upon her, her rights were not affected by the attempt to foreclose the mortgage.

That her dower was to be computed upon the value of the land at the time of the execution of the general assignment.

That as the $15,000 bond and mortgage was held, with others, only as collateral to the bond for $25,603, its assignee could only enforce it so far as the latter remained unpaid.

That the assignment of the $15,000 bond and mortgage to Hamilton White, being an assignment of a collateral security only, was, at law, void, but would, in equity, be regarded as an assignment of such an interest in the principal debt, as was equal to the consideration paid, viz., $3,500.

That in determining the amount due upon the mortgage so that the plaintiff might redeem therefrom, she was to be charged with $3,500, and interest thereon from August 5, 1845, and credited with the rents and profits which might have been realized by those in possession, over and above taxes and repairs, excluding such as arose from permanent improvements made by the mortgagees.

That, after the amount due upon the mortgage had been so computed, the plaintiff, to redeem therefrom, must pay a gross sum, to be ascertained by the principles on which the present value of life annuities are calculated, considering the portion of the annual interest on the amount due on the mortgage, which she was bound to pay as the annuity.

That as the plaintiff's right to dower in the portions sold by the defendant, Lucy Raynor, was not cut off by such sales she was not entitled to have the amounts realized thereon, applied upon the mortgage.

That the whole value of the plaintiff's dower, when so ascertained, should be charged upon such of the land as still remained unsold in the hands of the defendant, Lucy Raynor.

APPEAL from a judgment entered upon the trial of this action at a Special Term.

*Geo. F. Comstock*, for the appellant. Willett and Henry Raynor, mortgagees and grantees of Richard Raynor, not having been served, the foreclosure as to them was simply void. (*Watson* v. *Spencer*, 20 Wend., 260; *Reed* v. *Marble*, 10 Paige, 409.) The trust assignees of Willett and Henry Raynor were not made parties; nor

was it necessary, because that assignment was never recorded. (See Laws of 1844, p. 529.) Therefore they were cut off, and that trust extinguished. But inasmuch as the creators of the trust, Willett and Henry Raynor, were not foreclosed or in any wise affected by reason of not being made parties, the inevitable effect of extinguishing the trust was to vest or re-vest in them their whole estate free from the trust and subject only to the mortgage. When a trust or power to sell lands for the benefit of others is terminated, by the object failing, by the impossibility of execution, or by any event except the actual execution of such trust, the estate *eo instanti* is all in the author of such trust. (1 Rev. Stat., 1 ed., 729, ¶ 62, 67 ; *Hetzel* v. *Barber*, 69 N. Y., 1, 13 ; *Jackson* v. *Jansen*, 6 Johns., 73 ; *Sharpsteen* v. *Tillon*, 2 Cow., 651 ; *O'Brien* v. *Mooney*, 5 Duer, 51 ; *Peck* v. *Brown*, 26 How. Pr., 374 ; *Quin* v. *Skinner*, 49 Barb., 128 ; *Nichol* v. *Walworth*, 4 Denio, 385.)

*D. Pratt*, for the respondent.

SMITH, J. :

The action was brought to recover dower in an undivided half of a tract of land in the city of Syracuse, containing about one hundred and fifty-four acres. The facts found by the trial court, so far as they are material to the appeal, are as follows : The plaintiff is the widow of Willett Raynor. They were married in September, 1835, and he died in May, 1870. In March, 1840, Willett Raynor became seized of an undivided half of the land referred to, by a quit-claim deed from Richard Raynor to Henry Raynor and himself, expressing the consideration of $15,000. The deed was recorded in April, 1840. At the time of the conveyance, the lands were subject to a mortgage executed by Richard to Willett and Henry in December, 1835, to secure the bond of Richard of the same date, for the sum of $15,000, payable with interest in ten equal annual installments, which bond and mortgage were then held by the American Life Insurance and Trust Company, the mortgagees having assigned them to that company in September, 1838, with several other bonds and mortgages (in all about $35,000) as collateral, to secure their own bond to that company for $25,603. The assignment was recorded in September, 1838. In December, 1840, Willett and

Henry Raynor, then having title to the lands in question under the quit-claim deed from Richard, executed an assignment of all their property, real and personal, to William H. Alexander and Jasper Smith, in trust for the payment of the debts of the assignors. That assignment was never recorded. In 1843, Willett and Henry Raynor were declared bankrupt, and were discharged in bankruptcy, in proceedings commenced on their own petition. Their schedule of debts set forth their bond of $25,603, then still held by the Trust Company, and the assignment of the collaterals thereto, above mentioned, including the bond and mortgage for $15,000.

In July, 1845, the Trust Company assigned to Horace White the bond of Willett and Henry Raynor, with all the collaterals above mentioned, including the $15,000 mortgage, for the expressed consideration of $7,500. On August 5, 1845, Horace White assigned the Richard Raynor bond and mortgage to Hamilton White, for the consideration expressed of $3,500; but he did not assign the bond of Willett and Henry Raynor for $25,603, nor any of the other bonds and mortgages collateral thereto. On the same day that Hamilton White took the assignment, he commenced statutory proceedings to foreclose the $15,000 mortgage, claiming due, and to become due, $21,547. The one hundred and fifty-four acres were sold under those proceedings, on 5th of November, 1845, and bid in by Hamilton White for $3,000. Notice of the foreclosure and sale was served only on the mortgagor, Richard Raynor, and his judgment creditors.

In March, 1848, Hamilton White and wife conveyed the whole premises to Alfred H. Hovey, consideration expressed, $7,000; and in May, 1849, Hovey and wife conveyed them to the defendant, Lucy Maria Raynor, then the wife and now the widow of Henry Raynor; consideration expressed, $10,000.

In September, 1859, Lucy Maria Raynor, with her husband, sold and conveyed seventy-three acres—part of said land—to Oakwood Cemetery, consideration expressed, $15,000; and in May, 1871, she sold and conveyed to the Syracuse University thirty-three acres of said land, consideration expressed, $29,000, retaining in her possession forty-eight acres unsold. Each conveyance was with warranty. At the time of the commencement of this suit the cemetery

association and the university were in possession of their respective parcels. They, with others, who need not be named, were made defendants. Lucy Maria Raynor, the respondent, is the only defendant who answered the complaint. Before suit, dower was demanded of the respondent, and refused.

The Special Term held that the plaintiff was not barred by the foreclosure, and was entitled to dower, to be allotted out of the forty-eight acres yet held by the respondent. By this appeal the plaintiff seeks to review certain rulings of the court as to the computation of the value of the dower, and the terms on which it is to be awarded.

By the seizin of her husband during coverture, the plaintiff became invested with an inchoate right of dower, in one undivided half of the one hundred and fifty-four acres, subject to the $15,000 mortgage. That right became consummated on the death of her husband, in 1870, unless it was cut off by the foreclosure of the mortgage. No notice of the foreclosure sale was served upon the plaintiff, as required by the act of 1844 (L. 1844, ch. 346), which was then in force. It is insisted by the respondents' counsel that before the foreclosure the plaintiff's husband had been divested of his title, by the general assignment and his discharge in bankruptcy, and that, for that reason, notice was not required to be served on him, and consequently, not on his wife. The latter position is a *non sequitur.* Assuming for the present that the plaintiff's husband no longer had title, it does not follow that she was divested of her right of dower. No act, deed or conveyance of the husband, or judgment or decree confessed by or recovered against him, will prejudice the wife's right to her dower. (*Denton* v. *Nanny*, 8 Barb., 618.) The plaintiff was a "subsequent grantee," within the meaning of the act of 1844, "claiming under the mortgagor, by virtue of a title subject to the mortgage." (Act of 1844, §§ 1, 4.) She had done nothing to divest herself of her right, and service of notice of the sale was necessary to bar her dower. She is, therefore, entitled to dower on redeeming the mortgage, which, as to her, is unforeclosed.

The value of the plaintiff's dower is to be estimated upon the value of the property, at the time of its alienation by her husband.

A question is made as to the time when the husband parted with his title. We concur with the Special Term in its conclusion that the husband's title passed by the trust assignment, executed by him and Henry Raynor, for the benefit of their creditors. As the assignment was general, and conveyed all the property of the assignors, real and personal, the land in question passed, although not specifically mentioned in the schedules. (*Platt* v. *Lott*, 17 N. Y., 478 ; *Turner* v. *Jaycox*, 40 Barb., 164.)

The appellant's counsel insists that there is no proof that the trust was ever executed—indeed, that there is evidence tending to show it was not executed ; and that as the assignment was not recorded, the assignees were cut off by the foreclosure, although not served with notice, and, consequently, that the title reverted to the assignors.

We think, however, that it is to be presumed from the circumstances of the case, that the trust was executed. Prominent among these, are the lapse of time between the assignment and the foreclosure ; the nature of the trust, it being one which the interests of creditors and the duty of the assignees required to be closed without unnecessary delay; and the fact that the defendant, and those under whom she claims, have been in undisturbed possession of the land, for at least twenty-five years, asserting title.

The plaintiff's counsel gave some evidence at the trial, tending to show that Willett Raynor was in possession until the conveyance from White to Hovey, a period of about eight years subsequent to the assignment, but there is no evidence that whatever possession he then had was adverse to the title of the assignees. There is no question in this action as to the *bona fides* of the assignment. The date of the assignment, therefore, is to be taken as the time of alienation by the husband. The value of the property, at that time, as found by the Special Term, was $10,000 for the whole, or $5,000 for the undivided half.

We agree with the Special Term, that for the purpose of redeeming, the plaintiff is not entitled to have the money which was realized by the defendant, from sales of portions of the premises, applied upon the mortgage. Her right to dower in the portions of the land sold by the defendant was not cut off by such sales,

and if she had commenced her action against the purchaser alone, her title would have been as good as it is against the defendant. But in such action she would not have been entitled to have the moneys paid by the purchasers applied upon the mortgage. As to her, the mortgage is to be regarded as unpaid, as well as unforeclosed. The only effect of the sales upon her claim is that, as the defendant conveyed with warranty, it will prevent circuity of action to allot her dower in the unsold portion of the premises, if practicable. It is equitable towards the purchasers to apply the lands in the inverse order of alienation, to the satisfaction of the incumbrance of dower, as well as of that of the mortgage.

Several questions arise as to the amount which the plaintiff should be required to pay in order to redeem. The Special Term held that the dower right is subject to the full amount for which the mortgage was given, with interest from its date (1835), and also interest upon interest from the time of the foreclosure. We are of the opinion that these rulings are erroneous.

1. We do not think that the mortgage is an incumbrance upon the dower right, for the whole $15,000. For aught that appears, the conveyance of the equity of redemption by Richard to Henry and Willett Raynor, in 1840, would have operated as a merger of the morgage, but for the previous assignment to the trust company. The trust company held the mortgage, and the bond accompanying it, not absolutely, but merely as collateral to the debt of the assignors, Henry and Willett Raynor, and the assignors had the right to redeem or reclaim them on payment of the principal debt. That interest or right of the assignors was not cut off by the foreclosure, as they were not made parties to it. And the same right or interest still exists in the representatives of Henry and Willett Raynor, for aught that appears, unless it was merged in the fee of the land—an alternative that does not affect the result. There is no evidence that the interest of the Raynors in the bond and mortgage was transferred to the defendant. It follows that the defendant has no interest in the $15,000 bond and mortgage, unless she represents the principal debt held by the trust company, or some portion of it. Does she represent any part of that debt? As we have seen, the company assigned the principal debt, and all

the collaterals, including the $15,000 bond and mortgage to Horace White, in 1845, for the consideration expressed of $7,500, thus putting him in their shoes. Soon after, Horace assigned to Hamilton White the $15,000 bond and mortgage, for the expressed consideration of $3,500, but he did not assign the principal debt or any other collaterals. At law, this last assignment was a nullity. The security cannot be separated from the debt, and exist independently of it. (*Merritt* v. *Bartholick*, 36 N. Y., 44, and authorities there cited; *Wanzer* v. *Cary*, 76 N. Y., 526.) A different rule prevails in cases where the collaterals are severable from the principal, as where they consist of bills of exchange, or other negotiable paper. (*Hawks* v. *Hinchcliff*, 17 Barb., 492; *Battle* v. *Coit*, 26 N. Y. 404.)

But, notwithstanding the assignment was inoperative at law, an equitable view of the matter is, that as Horace White then held the principal debt, and as the $3,500 advanced by Hamilton presumptively went towards its payment, the latter acquired an interest in the debt, and in this particular collateral, to the amount paid by him, and the successive deeds from him to Hovey, and from Hovey to the defendant, may be regarded as assignments of such interest, the mortgage being unforeclosed as to the plaintiff. We are of the opinion, therefore, that the extent of the interest of the defendant in the $15,000 bond and mortgage is the sum of $3,500, with interest on it from the 5th of August, 1845—the date of its payment by Hamilton White. If the defendant has any other interest than as mortgagee in possession, in the undivided half of the premises in which the plaintiff claims dower, such interest is subject to the plaintiff's claim.

2. The foreclosure being wholly inoperative as to the plaintiff's rights, we perceive no ground for making a rest, as of the time of the foreclosure, in the computation of interest.

3. The plaintiff is entitled to have applied on the mortgage the rents and profits realized by the successive holders of the mortgage in possession, or which might, with proper care, have been realized over and above taxes, and ordinary repairs, and other expenses of that character, but without charging the defendant with the increased rents and profits arising from the use of any permanent

improvements made by the mortgagee. (*Bell* v. *The Mayor*, 10 Paige, 49.) The Special Term so held, substantially. After the amount due to the defendant upon the mortgage shall have been computed, upon the data and according to the rules above stated, the mode of ascertaining the sum which the plaintiff must pay in order to redeem, will be that stated by the chancellor in *Bell* v. *The Mayor* (*supra*). That is to say, she must pay a gross sum, which is to be ascertained upon principles on which the present value of life annuity is calculated, considering the portion which the plaintiff is to pay of the annual interest on the amount due to the defendant on the mortgage, as the annuity.

These conclusions lead to a reversal of the judgment, and as some different state of facts may be shown, there should be a new trial, with costs to abide the event.

TALCOTT, P. J., and HARDIN, J., concurred.

Ordered accordingly.